STANDARD FRUIT AND VEGETABLE CO., INC., Bright Truck Leasing Corporation, and James William Marshall, Petitioners,

v.

Rueben C. JOHNSON, Respondent.

No. 97–0976.

Supreme Court of Texas.

Argued Sept. 10, 1998.

Decided Dec. 31, 1998.

Catherine B. Smith, John H. Boswell, Terry M. Womac, Marie R. Yeates, Raymond A. Just, Houston, for Petitioners.

Frank W. Mitchell, Shelton Smith, Jonathan Erik Axelrad, Houston, for Respondent.

PHILLIPS, Chief Justice.

In this case, we again explore the parameters of the tort of intentional infliction of emotional distress. A truck driver drove a tractor-trailer rig into a parade, killing one participant and injuring two others. Another participant, Rueben C. Johnson, was not himself struck, but witnessed the accident. Johnson brought this suit for emotional distress against the truck driver, the driver's employer, and the lessor of the rig (the "Defendants"). The trial court granted summary judgment for all Defendants. The court of appeals reversed, however, holding that Defendants failed to establish as a matter of law that: (1) the truck driver had not intentionally or recklessly inflicted emotional distress on Johnson; and (2) his conduct was

not "extreme and outrageous". 984 S.W.2d 633.

■ We hold that intentional infliction of emotional distress is not available as an independent cause of action unless the actor intends to cause severe emotional distress or severe emotional distress is the primary risk created by the actor's reckless conduct. Johnson does not allege that the truck driver intentionally caused the accident. Instead, he argues that the truck driver recklessly caused his emotional distress. Because the primary risk of reckless driving is physical injury rather than emotional distress, we reverse the judgment of the court of appeals and render judgment that Johnson take nothing.

## I

Viewing the evidence in the light most favorable to Johnson, *see El Chico Corp. v. Poole*, 732 S.W.2d 306, 315 (Tex.1987), the summary judgment record reflects the following: The march, which Johnson organized to bring attention to issues regarding Vietnam veterans, was about five car-lengths long and included both vehicles and pedestrians. It began in Cleveland, Texas, and proceeded along U.S. Highway 59 to Houston. During the march, Johnson, who has used a wheelchair since losing both legs in a landmine explosion in Vietnam, was positioned immediately behind three flag bearers who led the parade. Johnson in turn was followed by about twenty pedestrians marching two-by-two, a mule-drawn wagon, and two pick-up trucks. A trooper from the Liberty County Sheriff's Department followed the procession, flashing the emergency lights of his squad car.

Shortly after the march began, a tractor-trailer rig driven by James W. Marshall, an employee of Standard Fruit and Vegetable Company, Inc., rear-ended the trooper's vehicle. On impact, Marshall's rig became airborne, landing on the bed of the pick-up truck at the back of the parade. The trooper was killed, while the pick-up driver and her passenger suffered physical injuries. Johnson did not see the initial impact with the trooper's car, but he turned around in time to see the tractor-trailer rig land on the pick-up

truck. The tractor-trailer finally stopped about two car lengths from Johnson. When impact occurred, Marshall was traveling 5 to 15 miles per hour above the 55 miles per hour speed limit, and he may have fallen asleep at the wheel.

Although Johnson suffered no physical impact, the accident aggravated a pre-existing post-traumatic stress disorder (PTSD) that arose from his war experiences. Johnson's PTSD symptoms, which first appeared several years after his combat injury, included trembling, twitching, feeling shaky, tense or achy muscles, restlessness, fatigue, shortness of breath with anxiety, heart pounding and racing, frequent sweating, dryness in the mouth, gastro-intestinal distress, hot flashes, frequent urination, a sense of being "keyed up" or "on edge," startle phenomena, difficulty concentrating, marked irritability, and sleep disturbances. Although his condition had gradually improved, the accident aggravated and exacerbated all the symptoms.

Johnson sued the Defendants in Harris County district court, alleging five grounds for recovery: (1) "[n]egligent infliction of physical injury [by mental shock] . . . as recognized and defined in *Boyles* [*v. Kerr*, 855 S.W.2d 593 (Tex.1993) ];" (2) intentional infliction of emotional distress based on reckless driving; (3) negligent infliction of physical and emotional injuries based on a "special relationship" between the Defendants and the driving public created by state and federal safety regulations; (4) infliction of physical and mental injuries by "egregious conduct"; and (5) "grossly negligent" infliction of mental anguish and physical injuries.

After discovery, Defendants moved for summary judgment on all claims, asserting that Johnson had failed to state a cause of action under Texas law because he sustained no physical injury in the accident, was not a statutory beneficiary under the wrongful death statute, and did not qualify for bystander recovery. Furthermore, Defendants maintained that, as a matter of law, Marshall had not engaged in willful, wanton, or extreme and outrageous conduct, and Defendants had no special relationship with travelers on public highways. Finally, Defendants argued that Johnson's claims for emotional distress based on egregious or grossly negligent conduct were simply not recognized under Texas law. The trial court granted summary judgment on all claims.

Johnson appealed on only two claims, intentional infliction of emotional distress and negligent infliction of emotional distress based on breach of the duty Defendants allegedly owed to highway users under state and federal traffic laws. The court of appeals affirmed summary judgment on Johnson's negligent infliction of emotional distress claim, concluding that traffic laws do not create a "special relationship" giving rise to compensable mental anguish damages. 684 S.W.2d at 635. It reversed summary judgment on the intentional infliction of emotional distress claim, however, holding that Defendants failed to establish as a matter of law that Marshall's conduct was not extreme and outrageous and that Johnson was not a "direct victim" of Marshall's reckless driving. 684 S.W.2d at 638–639.

We granted Defendants' petition for review. Before considering their claims, however, we first consider Johnson's cross-point that the court of appeals erred in holding that he waived his claim on a third ground, negligent infliction of physical injuries by mental shock.

## II

In his initial brief to the court of appeals, filed November 17, 1995, Johnson expressly limited his appeal in the following manner:

> This appeal will be limited to only two of the Plaintiff's theories of recovery. First, Plaintiff intends to establish there are genuine issues of material facts which precludes [sic] the trial court from ruling that Defendants did not commit the tort of intentional infliction of emotional distress. Second, Plaintiff intends to establish that there are genuine issues of fact which support emotional distress damages proximately caused by an automobile driver's breach of duty to traffic on a public road.

On July 8, 1996, two months after oral argument in the court of appeals, this Court handed down its decision in *Motor Express,*

*Inc. v. Rodriguez,* 925 S.W.2d 638 (Tex. 1996),[1] in which we held that breach of the duty imposed by the landowner-invitee relationship would not give rise to a claim for mental anguish damages alone. 925·S.W.2d at 639. While not precisely on point, this decision was not helpful to Johnson's second argument that state and federal traffic laws created a "special relationship" between Defendants and the driving public that gave rise to a duty, the breach of which would support a claim for emotional distress even absent proof of bodily injury.·

Five months after *Rodriguez* was decided, Defendants filed a supplemental brief to the court of appeals arguing that the holding in *Rodriguez* made it impossible for Johnson to prevail on his negligent infliction of emotional distress claim. In response, Johnson filed a supplemental brief on January 27, 1997, arguing that, despite *Rodriguez,* he was entitled under Texas law "to recover for physical injuries under standard negligence principles notwithstanding that the physical injury is produced indirectly through emotional trauma." The court of appeals treated Johnson's supplemental brief as an attempt to assert a new claim, and held without discussion that Johnson waived that claim. 684 S.W.2d at 637. In his brief to this Court, Johnson recognizes that he was attempting to add a new claim, but argues that he was entitled to supplement in the interest of "justice" because *Rodriguez* weakened his claim that under our language in *Boyles v. Kerr,* 855 S.W.2d 593 (Tex.1993), breach of *any* distinct underlying duty would support a claim for mental anguish damages alone.[2]

■ Under former rule of appellate procedure 74(*o*), a brief "may be amended or supplemented at any time when justice requires *upon such reasonable terms as the court may prescribe.*" TEX.R.APP. P. 74(*o*) (emphasis added)(superseded Sept. 1, 1997, *currently at* TEX.R.APP. P. 38.7).[3] Generally,

a party must seek leave of court to file an amended or supplemental brief, and the appellate court has some discretion in deciding whether to allow the filing. *See Fredonia State Bank v. General Am. Life Ins. Co.,* 881 S.W.2d 279, 284–85 (Tex.1994). Johnson did not seek leave to file his supplemental brief; but even if he had, we would conclude that the court of appeals did not abuse its discretion in declining to consider Johnson's new point of error. Regardless of whether Johnson's assertion that *Rodriguez* narrowed the law in Texas is correct, he cannot wait more than six months and then argue that "justice" requires that he be permitted post-argument to resurrect an abandoned claim. Because the court of appeals was entitled to disregard his new argument, Johnson's cross-point is overruled.

### III

■ We now consider Defendants' claim that they were entitled to summary judgment on Johnson's claim for intentional infliction of emotional distress. In 1993, we recognized the independent tort of intentional infliction of emotional distress, adopting the elements of the RESTATEMENT (SECOND) OF TORTS § 46 (1965). *See Twyman v. Twyman,* 855 S.W.2d 619, 621–22 (Tex.1993). To recover under this tort, a plaintiff must prove that 1) the defendant acted intentionally or recklessly, 2) the conduct was "extreme and outrageous," 3) the actions of the defendant caused the plaintiff emotional distress, and 4) the resulting emotional distress was severe. *See id.* at 621. Only the first two elements are at issue in this case.

Johnson does not claim that Marshall intentionally caused the accident, but he does argue that Marshall recklessly caused his emotional distress. In *Twyman,* we specifically adopted the recklessness standard of section 46 and defined it generally. *See id.*

---

1. There was no motion for rehearing in *Rodriguez.*

2. In *Boyles,* the Court stated that, although there is generally no recovery for negligently inflicted emotional distress, a claimant may "recover mental anguish damages caused by [a] defendant's breach of some other legal duty." 855 S.W.2d at 597.

3. Johnson filed his appeal in the court of appeals before the current rules of appellate procedure came into effect on September 1, 1997. Therefore, the former rules of appellate procedure govern his appeal to the court of appeals. The current version of the rules contains a similar provision with almost identical language. *See* TEX.R.APP. P. 38.7.

at 624 (citing the RESTATEMENT (SECOND) OF TORTS § 500, cmt. a (1965)). However, until today we have not examined an intentional infliction of emotional distress claim based solely on reckless conduct. The parties disagree on how to apply the recklessness standard in an intentional infliction of emotional distress action.

## A

Section 46 of the RESTATEMENT (SECOND) OF TORTS states:

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm results from it, for such bodily harm.

(2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress

(a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or

(b) to any other person who is present at the time, if such distress results in bodily harm.

RESTATEMENT (SECOND) OF TORTS § 46 (1965).

Defendants argue that Johnson cannot prevail on his intentional infliction of emotional distress claim for two reasons. First, they contend that the Restatement contemplates separate standards for plaintiffs who are "direct victims" of intentionally or recklessly inflicted emotional distress and "bystanders" who suffer emotional distress from conduct "directed at" some other person. Johnson makes no claim as a "bystander," and Defendants argue that, as a matter of law, Marshall's conduct could not have been "directed at" Johnson because there is no evidence that Marshall was aware that either Johnson or the marchers were on the highway. See Christensen v. Superior Court, 54 Cal.3d 868, 2 Cal.Rptr.2d 79, 820 P.2d 181, 202 (1991) (holding that intentional infliction of emotional distress requires conduct that is "directed at the plaintiff" or which occurs in "the presence of a plaintiff of whom the defendant is aware"). According to Defen-

dants, conduct that is reckless only because it imposes a risk of harm to members of the general public is not sufficiently directed at a particular individual to create liability under section 46. See Dillman v. Kahres, 201 Ga. App. 210, 411 S.E.2d 43, 44 (1991); Dornfeld v. Oberg, 503 N.W.2d 115, 119 (Minn.1993).

Second, Defendants argue that because section 46 is directed solely to conduct that was intended or likely to produce emotional distress, an actor is not "reckless" for section 46 purposes unless the defendant consciously disregards a high probability of *severe emotional distress*, see RESTATEMENT (SECOND) OF TORTS § 46 cmt. i (1965), not merely a high probability of *physical harm* to which emotional distress may be causally linked. Defendants maintain that although Johnson's conduct created a significant risk of physical injury, the incidental risk that someone else would suffer severe emotional distress was not "highly probable" as a matter of law.

Johnson counters that reckless conduct is sufficiently "directed at" the plaintiff if the plaintiff is directly imperiled by the defendant's conduct. Furthermore, Johnson contends that the risk of physical injury and the risk of emotional distress are co-extensive. Thus, a defendant who acts in conscious disregard of a high probability of *any harm* is responsible for emotional distress resulting to people who are within the area made dangerous by the defendant's conduct or who may rightfully come within that area. See RESTATEMENT (SECOND) OF Torts §§ 46 cmt. i, 500 cmt. d (1965). Because he was in the "zone of danger" that Marshall's alleged reckless driving created, Johnson argues that he may recover emotional distress damages under section 46 as a direct victim. See id. at § 500 cmt. d.

The court of appeals agreed with Johnson, concluding: "Marshall's motorized somnambulism cannot be characterized as being directed solely at the deputy—in fact, Marshall's 'conduct' was a direct threat to all the marchers who conceivably could have encountered the tractor trailer plowing through their midst." 684 S.W.2d at 639. Because Johnson, as a member of the parade, was endangered by Marshall's conduct, and thus

a "direct victim," the court concluded that Standard Fruit was not entitled to summary judgment on Johnson's intentional infliction of emotional distress claim. *See id.*

We do not decide whether and to what extent conduct must be directed at a particular individual to give rise to liability under an intentional infliction of emotional distress theory. Instead, we hold only that Johnson is not entitled to recover because the tort of intentional infliction of emotional distress is available only in those situations in which severe emotional distress is the intended consequence or primary risk of the actor's conduct.

From the structure of the Restatement, it is clear that section 46 is meant to provide redress only when the tortfeasor desired or anticipated that the plaintiff would suffer severe emotional distress. *See* RESTATEMENT (SECOND) OF TORTS § 46 cmt. b (1965) ("[T]he law has been slow to afford independent protection to the interest in freedom from emotional distress standing alone"); *see also* § 47 cmt. a (section 46 recovery is not available if an actor intends to cause some other harm or if his conduct poses a risk of some harm other than emotional distress).[4] There is no liability under section 46 if the actor "intends to invade some other legally protected interest," even if emotional distress results. *See* RESTATEMENT (SECOND) OF TORTS § 47 cmt. a (1965). Likewise, if "the actor's conduct is tortious solely because it involves a risk of invading an interest other than the interest in freedom from emotional distress, the tortious quality of the act is insufficient to create liability for emotional distress alone [under section 46]." *Id.* Where emotional distress is solely derivative of or incidental to the intended or most likely consequence of the actor's conduct, recovery for such dis-

tress must be had, if at all, under some other tort doctrine. On the other hand, if conduct is intended or primarily likely to produce severe emotional distress, section 46 is an applicable theory of recovery even if the actor's conduct also produces some other harm, such as physical injury. *See* RESTATEMENT (SECOND) OF TORTS § 46(1) (1965).

As section 46 was originally drafted in 1934, conduct was not actionable if intended, or though not so intended was primarily likely, to cause *only mental or emotional distress* to another.[5] *See* RESTATEMENT OF TORTS § 46 cmt. c (1934). Under this version, "there was no recovery for emotional injury, even when intentionally inflicted, if the defendant's conduct did not otherwise amount to a tort." Daniel Givelber, *The Right to Minimum Social Decency and the Limits of Evenhandedness: Intentional Infliction of Emotional Distress by Outrageous Conduct*, 82 COLUM. L.REV. 42, 43 (1982). The early version of section 46 thus reflected a general reluctance to provide a remedy for mental anguish unless it could be brought within the scope of a traditional tort. *See* W. PAGE KEETON ET AL., Prosser & KEETON ON TORTS § 12, at 56 & n. 17 (5th ed.1984).

After legal scholars noted that courts were already protecting emotional tranquility by manipulating traditional tort doctrines, "the Restatement in 1948 abandoned its earlier position and declared that '[o]ne who ... intentionally causes severe emotional distress to another is liable ... for such emotional distress.' " *Howell v. New York Post Co., Inc.*, 81 N.Y.2d 115, 596 N.Y.S.2d 350, 612 N.E.2d 699, 701–02 (1993); *see also* Givelber, *supra*, at 43 (discussing the contributions of Professors Calvert Magruder and William Prosser in the Restatement's developments).

4. Similarly, the 22 illustrations accompanying section 46 reflect the tort's limited scope and application. In each scenario, the only possible injury to the victim from the conduct described is emotional distress. *See* RESTATEMENT (SECOND) TORTS § 46, illus. 1–22 (1965).

5. The 1934 version of section 46 stated: " ... conduct which is intended or which though not so intended is likely to cause only a mental or emotional disturbance to another does not subject the actor to liability (a) for emotional distress resulting therefrom, or for bodily harm unexpect-

edly resulting from such disturbance." RESTATEMENT OF TORTS § 46 (1934). If the actor's conduct was likely only to cause emotional distress, he or she was insulated from liability for any physical or emotional harm that might result. However, if the actor was aware of a risk of physical injury, though unintended and not a primary risk, the actor could be liable for bodily injury resulting therefrom. *See id.* cmt. b. Regardless of the actor's awareness of potential harm, however, there was no recovery for emotional distress.

The current version of section 46, adopted in 1965, modified the tort by requiring "extreme and outrageous conduct" and by including reckless conduct. *See* RESTATEMENT (SECOND) OF TORTS § 46 (1965).

Thus, the tort's clear purpose is to supplement existing forms of recovery by providing a cause of action for egregious conduct "that its more established neighbors in tort doctrine would technically fence out." *Towards a Jurisprudence of Injury: The Continuing Creation of a System of Substantive Justice in American Law,* 5–11, 5–13 (Report to the American Bar Association from the Special Committee on the Tort Liability System, 1984); *see also Rigazio v. Archdiocese of Louisville,* 853 S.W.2d 295, 298–99 (Ky.Ct.App.1993) (noting that intentional infliction of emotional distress is a gap-filler tort intended to supplement existing tort theories). In short, intentional infliction of emotional distress is a "gap-filler" tort that should not be extended to circumvent the limitations placed on the recovery of mental anguish damages under more established tort doctrines. *See Eastern Airlines, Inc. v. King,* 557 So.2d 574, 575 (Fla.1990); *Rigazio,* 853 S.W.2d at 298–99; *K.G. v. R.T.R.,* 918 S.W.2d 795, 799 (Mo.1996); *see also* Givelber, *supra,* at 43.

Based on this review of the development of the tort, we hold that a claim for intentional infliction of emotional distress cannot be maintained when the risk that emotional distress will result is merely incidental to the commission of some other tort. In the present case, Marshall's conduct, even if reckless, involved a primary risk of physical injury or death. To the extent it also involved a risk that others would suffer only emotional distress, Texas permits recovery under the limitations imposed by courts for public policy

reasons, such as bystander recovery.[6] We, therefore, hold that Johnson may not recover under an intentional infliction of emotional distress theory because emotional distress was not the intended or primary consequence of Marshall's conduct.

**B**

The Defendants also claim that Johnson cannot recover because Marshall's conduct was not extreme and outrageous. Because of our disposition of this case, we need not decide this issue.

**IV**

On the claims preserved and on the record in this case, Johnson has no cause of action for emotional distress. Therefore, we reverse the judgment of the court of appeals and render judgment that Johnson take nothing.

---

6. Historically, the common law was reluctant to allow general recovery for mental anguish in the absence of related physical injury because it is difficult to predict or verify. In modern times, however, courts have recognized that there are some situations in which the problems of foreseeability and genuineness are sufficiently mitigated that the law should allow recovery for mental anguish in those circumstances. Adopting the three-factor bystander recovery test from *Dillon v. Legg,* 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912, 920 (1968), we held in *Freeman v. City of*

*Pasadena* that, in limited circumstances, a bystander who suffers no physical injury may recover for his or her mental anguish. 744 S.W.2d 923, 923–24 (Tex.1988). To recover as a bystander under *Freeman,* a plaintiff must establish that he or she: (1) was present at or near the scene of the accident; (2) contemporaneously perceived the accident as it happened or immediately afterward; and (3) was closely related to the victim. *See id.* Johnson does not meet the third requirement.