No. 04-01-00335-CV



QUAKER PETROLEUM CHEMICALS COMPANY,


Appellant


v.


Linda Tuttle WALDROP and Jane McCord,

Appellees


From the 229th Judicial District Court, Duval County, Texas

Trial Court No. 14,984

Honorable Ricardo H. Garcia, Judge Presiding

 

Opinion by: Paul W. Green, Justice


Sitting: Phil Hardberger, Chief Justice

 Alma L. López, Justice

 Paul W. Green, Justice


Delivered and Filed: March 6, 2002


REVERSED IN PART & RENDERED


 Quaker Petroleum Chemicals Company ("Quaker") appeals a jury verdict awarding
damages to Linda Tuttle Waldrop and Jane McCord for negligence, gross negligence, and
intentional infliction of emotional distress in relation to a chemical spill occurring in
Halletsville, Texas. Because the evidence is legally insufficient to support the verdict, we
hold the trial court erred in denying Quaker's motion for JNOV, reverse the trial court's
judgment as to Waldrop and McCord, and render judgment in favor of Quaker. (1) 

Background

 Dave Edmonds stored chemicals for Quaker in plastic drums in a warehouse in
Hallettsville. Edmonds allowed Linda and Louis Tuttle, neighbors to the warehouse, to store
a meat freezer in the warehouse. When Linda Tuttle went into the warehouse in October
1990, she noticed a sharp smell. She quickly retrieved meat from the freezer and left, but
later that day, she went to the emergency room, complaining of respiratory problems. The
smell was traced to a leaking plastic drum. After the spill, Quaker representative Rick Talley
visited the warehouse. Talley talked to Jane McCord, another neighbor to the warehouse,
and told her that if anyone was thinking of suing Quaker over the spill, Quaker would
countersue. Talley made similar comments to Linda. Talley paid Linda and her husband for
medical bills and inconvenience after they signed a letter stating they would not bring suit
for damages directly or indirectly related to the spill. 

 Four months later, while Jane was at a church Valentine's Day party, she overheard
Edmonds discussing with another parishioner how things would go a lot more smoothly if
"there wasn't a lot of sue-happy people around." After these comments and others like them,
Jane and her husband spoke to the preacher, who advised them to change religion classes.
After Jane's brother-in-law died and her son was diagnosed with a serious illness, she asked
that her family's name be added to the church prayer list. After she made the request,
Edmonds told Jane that "when bad things happen to good people, it's because they're not
living their life right and that it's a punishment from God." After the comments, Jane and
Linda, along with their families, joined new churches because "Mr. Edmonds was a gossip
person, he - he was worse than a woman. But his voice was loud and it was big and he was
in good with the preacher, so he just put - put all of us down and just got real ugly and they
were spreading rumors and it was just - it hurt a lot." In October 1992, the families brought
suit against Quaker alleging negligence for the spill. Two years later, they amended their
petition to add the claim of intentional infliction of emotional distress (IIED), relying on the
statements made by Talley and Edmonds. 

 At trial, the jury found Quaker liable to Linda for negligence and gross negligence.
The jury also found Quaker liable to Linda, Jane, and Jane's son for IIED.
(2) Quaker appeals,
arguing the trial court erred in denying its motion for JNOV. (3)

Sufficiency of the Evidence

 Quaker claims the trial court erred in denying its motion for JNOV because the
evidence is legally insufficient to support the jury findings of negligence, gross negligence,
and IIED. Texas Rule of Civil Procedure 301 provides that a court may render JNOV if a
directed verdict would have been proper and may disregard any jury finding that has no
support in the evidence. Therefore, a JNOV should be entered when the evidence is
conclusive and one party is entitled to judgment as a matter of law. Mancorp, Inc. v.
Culpepper, 802 S.W.2d 226, 227-28 (Tex. 1990). 

 We review the denial of a motion for JNOV under a legal sufficiency standard,
meaning we review the evidence in the light most favorable to the jury findings, considering
only the evidence and inferences that support them and disregarding all evidence and
inferences to the contrary. Navarette v. Temple Indep. Sch. Dist., 706 S.W.2d 308, 309 (Tex.
1986). If there is more than a scintilla of evidence to support the findings, the motion for
JNOV was properly denied. Mancorp, 802 S.W.2d at 228. Only if there is no evidence to
support the jury's findings must we examine the entire record to see if the contrary position
is established as a matter of law. Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex.
1989).


 Negligence & Gross Negligence


 To sustain a negligence action, the plaintiff must produce evidence of a legal duty
owed by the defendant to the plaintiff, a breach of that duty, and damages proximately
caused by that breach. Praesel v. Johnson, 967 S.W.2d 391, 394 (Tex. 1998). To sustain a
gross negligence claim, the plaintiff must demonstrate: (1) the act or omission complained
of, viewed objectively from the actor's standpoint, must involve an extreme degree of risk,

considering the probability and magnitude of the potential harm to others; and (2) the actor
must have actual, subjective awareness of the risk involved, but nevertheless proceed in
conscious indifference to the rights, safety, or welfare of others. Transp. Ins. Co. v. Moriel,
879 S.W.2d 10, 23 (Tex. 1994). Importantly, if there is insufficient evidence to support a
negligence claim, then a claim based on gross negligence must also fail. Southwestern Bell
Mobile Sys. v. Franco, 971 S.W.2d 52, 55 (Tex. 1998); Saenz v. Fidelity & Guar. Ins.
Underwriters, 925 S.W.2d 607, 614 (Tex. 1996).

 Further, a claim for past medical care must be supported by evidence that such
expenses were reasonably necessary as a result of the injury suffered. Carr v. Galvan, 650
S.W.2d 864, 868 (Tex. App.-San Antonio 1983, writ ref'd n.r.e.). Although expense
statements constitute evidence of actual medical costs, such statements, alone, are not
evidence of the reasonableness of the expense. (4) The jury found Quaker liable to Linda for
negligence and gross negligence, awarding her $50,000.00 for past medical care. (5) Quaker
argues that although Linda presented medical records and testified regarding her injuries, she
offered no evidence demonstrating the medical expenses were reasonable and necessary. 

 Regarding medical expenses, Linda offered her own testimony and the medical
records reflecting treatment and payment of the bills. We hold this evidence is legally
insufficient to demonstrate the treatment was reasonable and necessary, and as such, we
reverse the judgment against Quaker on Linda's negligence claim. Further, because an
exemplary damages award cannot stand in the absence of actual damages, we reverse the
judgment against Quaker on Linda's gross negligence claim. Southwestern Bell Mobile Sys.,
971 S.W.2d at 55. We sustain Quaker's issues one and two.


 Intentional Infliction of Emotional Distress 


 The trial court also denied Quaker's motion for JNOV as to the IIED claims brought
by Linda and Jane. To sustain an IIED claim, a plaintiff must prove: (1) the acts were
intentional or reckless; (2) the conduct was extreme and outrageous; (3) the acts caused the
plaintiff emotional distress; and (4) the distress suffered was severe. Bradford v. Vento, 48
S.W.3d 749, 758 (Tex. 2001). The threshold issue for the trial court is whether the conduct
in question may reasonably be regarded as extreme and outrageous. (6) 

 In recognizing the IIED claim, the supreme court adopted section 46 of the
Restatement: 

It has not been enough that the defendant has acted with an
intent which is tortious or even criminal, or that he has intended
to inflict emotional distress, or even that his conduct has been
characterized by "malice," or a degree of aggravation which
would entitle the plaintiff to punitive damages for another tort.


Restatement (Second) of Torts § 46 cmt. h (1965); Twyman, 855 S.W.2d at 621-22.
Rather, the conduct must be "so outrageous in character, and so extreme in degree, as to go
beyond all possible bounds of decency, and to be regarded as atrocious, and utterly
intolerable in a civilized community." (7) Mere insults, indignities, threats, annoyances, petty
oppressions, or other trivialities do not rise to the level of extreme and outrageous conduct.
GTE Southwest, Inc., 998 S.W.2d at 612; Schauer v. Mem'l Care Sys., 856 S.W.2d 437, 451
(Tex. App.-Houston [1st Dist.] 1993, no writ).

 Linda and Jane sought IIED damages based on the comments made by Quaker
employees and on the chemical spill, itself. Although we do not comment on the
appropriateness of Talley's and Edmonds's conduct, we cannot hold that their statements rise
to the level of extreme and outrageous conduct. See Morgan v. Anthony, 27 S.W.3d 928,
930-31 (Tex. 2000). Further, an IIED claim based on Quaker's handling of the spill fails for
lack of intentionality. O'Bryant, 18 S.W.3d at 217; Standard Fruit & Vegetable Co., Inc.
v. Johnson, 985 S.W.2d 62, 68 (Tex. 1998); In Johnson, the Texas Supreme Court held that
a plaintiff could not recover damages for IIED after witnessing a truck driver drive a
tractor-trailer rig into a parade: 

[W]e hold that a claim for intentional infliction of emotional
distress cannot be maintained when the risk that emotional
distress will result is merely incidental to the commission of
some other tort. In the present case, Marshall's conduct, even if
reckless, involved a primary risk of physical injury or death. To
the extent it also involved a risk that others would suffer only
emotional distress, Texas permits recovery under the limitations
imposed by courts for public policy reasons, such as bystander
recovery.

 

Johnson, 985 S.W.2d at 68. The court emphasized that IIED is a "gap-filler" tort that should
not be extended to circumvent the limitations placed on the recovery of mental anguish
damages under more established tort doctrines. Id. To allow Linda and Jane to recover IIED
damages based upon the chemical spill would circumvent the limitations placed on the
recovery of mental anguish damages on a negligence or gross negligence claim. See id. We
sustain Quaker's third issue. 

Conclusion

 Because the evidence is legally insufficient, we hold the trial court erred in denying
Quaker's motion for JNOV on the findings of negligence, gross negligence, and IIED against
Quaker. We sustain Quaker's first three issues on appeal and render judgment in favor of
Quaker that Linda and Jane take nothing on their claims against Quaker. We need not reach
Quaker's remaining issues. 

 

 PAUL W. GREEN

 JUSTICE


PUBLISH
1. The trial court entered a take-nothing judgment against five other plaintiffs, Charles T. Wells, Mona
Wells, Louis Tuttle, and Dwight McCord, individually and as next friend of Dillon McCord, which has not been
appealed.
2. The jury awarded Linda actual damages in the amount of $60,000.00 and exemplary damages in the
amount of $300,000.00, which was reduced to $200,000.00 to comply with the statutory cap. The jury awarded
Jane $65,000.00 in actual damages. The trial court denied Quaker's motion for JNOV and entered judgment,
omitting a damages award to Dillon, Jane's son.
3. Quaker argues JNOV was proper because: (1) there is no evidence supporting Linda's negligence claim;
(2) there is no evidence supporting Linda's or Jane's IIED claims; (3) the IIED claims are barred by the statute of
limitations; and (4) Linda's claims are barred by release.
4. Id. While proof that the bills were paid may constitute some evidence as to the necessity of the medical
fees, such evidence does not demonstrate proof of reasonableness of the fees. Monsanto Co. v. Johnson, 675
S.W.2d 305, 312 (Tex. App. - Houston [1st Dist.] 1994, writ ref'd n.r.e.); Waltz v. Waltz, 776 S.W.2d 320, 322
(Tex. App. - Houston [1st Dist.] 1989, no writ) (holding that the plaintiff's testimony regarding medical treatment,
along with evidence that insurer paid medical bills constituted an implied finding of the necessariness of medical
fees, but no evidence of the reasonableness of the fees).
5. Linda was awarded $50,000.00 for past medical expenses arising from the negligence claim and
$10,000.00 for physical pain and mental anguish arising from the IIED claim.
6. Id.; Brewerton v. Dalrymple, 997 S.W.2d 212, 216 (Tex.1999) (citing Twyman v. Twyman, 855 S.W.2d
619, 621 (Tex.1993)). It is initially for the trial court to decide whether the defendant's conduct may reasonably be
regarded as so extreme and outrageous as to permit recovery. GTE Southwest, Inc. v. Bruce, 998 S.W.2d 605, 616
(Tex. 1999).
7. Brewerton, 997 S.W.2d at 216; City of Midland v. O'Bryant, 18 S.W.3d 209, 217 (Tex.2000).