IN THE SUPREME COURT OF TEXAS









IN THE SUPREME COURT OF
TEXAS

 

════════════

No. 02-0120 

════════════

 

Hoffmann-La
Roche Inc., a/k/a ARoche,@ Petitioner

 

v.

 

Joan
Zeltwanger, a/k/a Joan Gonzales, Respondents

 

════════════════════════════════════════════════════

On Petition for
Review from the

Court of Appeals
for the Thirteenth District of Texas

════════════════════════════════════════════════════

 

Argued on February 5, 2003

 

Justice
O=Neill, concurring,
joined by Justice Smith.

 

 

In
attempting to cabin what has clearly become an amorphous and overused tort, the
Court has fashioned a cure that is worse than the disease.  The Agap-filler@
approach that the Court adopts to determine the viability
of a claim for intentional infliction of emotional distress is unworkable and
ill-advised.  The sounder jurisprudential
course would be to once again emphasize the stringent threshold an employee
must meet to assert an intentional-infliction claim based on conduct occurring
in the workplace.  The conduct presented
in this case, although certainly repugnant and reprehensible, did not rise to
the extremely high level we have set for this tort.  Accordingly, I concur in the Court=s judgment, but not its reasoning.

I  

Under
the approach that the Court adopts today, the availability of a remedy for
sexual harassment would foreclose an intentional-infliction claim to the extent
that the two claims are based upon the same facts.  Though beguilingly straightforward in theory,
the Agap-filler@
approach presents myriad problems in application that will, I believe,
ultimately prove to be unworkable.  For
example, it is often difficult to discern whether the same facts will support
different causes of action, forcing the fact-finder Ato draw a virtually impossible distinction
between recoverable and disallowed injuries.@  Twyman v. Twyman, 855 S.W.2d 619, 627
(Tex. 1993) (Phillips, C.J.,
concurring and dissenting).  In
cases like this one, an employer would essentially be required to present
evidence to show that the acts complained of were in fact sexually motivated,
thus supporting a sexual harassment claim, in order to obtain summary
disposition of a claim for intentional infliction of emotional distress.

Moreover,
while some of a supervisor=s
allegedly abusive actions in the workplace may have sexual motivations,
others may not.  Thus, conduct that would
support an intentional-infliction claim might not support a sexual harassment
claim, and vice-versa.  In this case, Zeltwanger alleges certain actions that she claims are
separate and apart from those constituting sexual harassment, such as Apublic humiliation, verbal oppression,
physical threats, abuse of power, and mistreatment of an employee known to be
peculiarly susceptible to emotional distress.@  We simply cannot know until a jury returns
its verdict whether or not particular alleged behavior was sexually motivated,
and even then it will prove difficult if not impossible for reviewing courts to
parse the potentially overlapping evidence that might support the jury=s findings. 


Adopting
a categorical Agap-filler@
approach in all cases presents other problems, as well.  For instance, plaintiffs may choose to forego
pleading other available remedies in hopes of obtaining a potentially more
lucrative intentional-infliction recovery. 
This would have the untenable effect of forcing defendants to assume the
burden of proving alternative means of recovery against themselves to
avoid intentional-infliction exposure. 
And if the plaintiff does decide to plead multiple liability theories
based on the same facts, what happens if the jury fails to find liability on
any other claim but intentional infliction of emotional distress?  Does the fact that the plaintiff did not
sustain his or her evidentiary burden on an alternative claim create a gap that
intentional infliction was designed to fill? 
For these reasons, I would decline to adopt a categorical gap-filler
approach in this case, without foreclosing the possibility that it might be
appropriate in some other. 

II

Hoffman-La
Roche alternatively challenges the legal sufficiency of the evidence to support
Zeltwanger=s claim for intentional infliction of
emotional distress, whether we focus only on Roche=s acts, as the court of appeals did, or on
Webber=s as well. 
Specifically, Roche claims there is no evidence of extreme and
outrageous conduct as we have defined it for purposes of this tort.  I agree that, as a matter of law, the record
here will not support a claim for intentional infliction of emotional distress.

To
recover damages for intentional infliction of emotional distress, a plaintiff
must establish that: (1) the defendant acted intentionally or recklessly; (2)
the defendant=s conduct was extreme and outrageous; (3)
the defendant=s actions caused the plaintiff emotional
distress; and (4) the resulting emotional distress was severe.  Standard Fruit &
Vegetable Co. v. Johnson, 985 S.W.2d 62, 65 (Tex. 1998).  To be extreme and outrageous for purposes of
this tort, the conduct must be A>so outrageous in character, and so extreme
in degree, as to go beyond all possible bounds of decency, and to be regarded
as atrocious, and utterly intolerable in a civilized community.=@  Twyman v. Twyman,
855 S.W.2d 619, 621 (Tex. 1993) (quoting Restatement
(Second) of Torts ' 46 cmt. d
(1965)).  It is for the court to
determine, in the first instance, whether particular conduct has met this high
standard.  See GTE
Southwest, Inc. v. Bruce, 998 S.W.2d 605, 616 (Tex. 1999); Restatement (Second) of Torts ' 46 cmt.
h (1965). 

Roche
contends that, in cases involving sexual misconduct in the workplace, courts
have reached irreconcilable results in attempting to define extreme and
outrageous conduct, providing no clear guidance to employers.  Roche urges us to articulate specific
criteria delineating when sexual harassment in the workplace becomes so
egregious that it will support a claim for intentional infliction of emotional
distress.  Extreme and outrageous conduct
in this context, Roche contends, should be defined as behavior of a continuing
nature which is physically abusive or so threatening of immediate and
substantial physical abuse that a reasonable person would feel afraid.

I agree
with Roche that the legal standard for Aextreme and outrageous conduct@ sufficient to support an
intentional-infliction claim has proved to be amorphous and often
inconsistent.  Since we first adopted the
tort, it has been criticized as overly subjective and heavily value‑laden.  See, e.g., Twyman, 855 S.W.2d at 629 (Hecht, J., concurring and dissenting).  In the employment context, particularly, we
have set an exceptionally high bar to prevent employers from facing liability
for Aordinary employment disputes.@  GTE
Southwest, 998 S.W.2d at 612‑13.  We have recognized that employers, in
properly managing their businesses, must be afforded wide latitude Ato supervise, review, criticize, demote,
transfer, and discipline employees,@ even though emotional distress will likely
result.  Id. at
612.  In fact, we have held an
employer=s conduct to be sufficiently extreme and
outrageous to support recovery for intentional infliction of emotional distress
on only one occasion.  See id. at 617.  A close
reading of that decision reveals that we applied a test very close to the one
Roche advocates here.

In GTE,
we recognized that an employee Amay recover damages for intentional
infliction of emotional distress in an employment context as long as the
employee establishes the elements of the cause of action.@  Id. at 611.  We
cautioned, however, that an intentional-infliction claim Adoes not lie for ordinary employment
disputes,@ id. at
612-13, but Aonly in the most unusual of circumstances.@  Id. at 613.  In
that case, three female employees sued GTE based upon their supervisor=s abusive conduct.  There was evidence that, like Webber, the
supervisor continually told offensive jokes and engaged in sexual innuendo over
the employees= repeated objections.  Id. at 613.  But there was additionally evidence that, in
conjunction with that sexually harassing behavior, the supervisor repeatedly
physically and verbally threatened and terrorized the employees.  There was evidence, for example, that the
supervisor

 

was continuously in a rage, and that [he]
would frequently assault each of the employees by physically charging at them.
. . . [He] would bend his head down, put his arms straight down by his sides,
ball his hands into fists, and walk quickly toward or Alunge@ at the employees, stopping uncomfortably
close to their faces while screaming and yelling.  The employees were exceedingly frightened by
this behavior, afraid that [he] might hit them. [A witness] testified that [the
supervisor] charged the employees with the intent to frighten them.  At least once, another employee came between
[him] and [another employee] to protect her from [his] charge.

 

Id. at 613-14.  There
were numerous other occasions when the supervisor engaged in behavior that
caused employees to feel immediately physically threatened.  He would at least daily require one employee
to come into his office and stand before him while he silently stared at her
for as long as thirty minutes, on one occasion backing her into a corner and
leaning over her while he engaged in verbal abuse.  Id. at 614.  

In
sustaining the employees=
judgment for intentional infliction of emotional distress, we emphasized Athe severity and regularity of [the
supervisor=s] abusive and threatening conduct.@  Id. at 617.  We
emphasized that employers must have substantial leeway in supervising and
disciplining employees, and that A[o]ccasional malicious and abusive incidents should not
be condoned, but must often be tolerated in our society.@  Id.  But we concluded that the supervisor in GTE
exceeded that leeway by Aregularly assault[ing],
intimidat[ing], and
threaten[ing]@ workers such that the workplace became Aa den of terror for the employees.@  Id.  Thus, we made it clear that the bar an
employee must meet to assert a claim for intentional infliction of emotional
distress in the workplace is exceptionally high.

The
conduct Zeltwanger alleges in this case, while
certainly vulgar and reprehensible, is not comparable
to the pattern of behavior established in GTE.  While there is evidence that Webber pounded
on the dashboard of Zeltwanger=s car on one occasion, touched her hair on
another, rifled through her underwear drawer B
purportedly in search of her stereo B on yet another, and was verbally abusive
in conducting Zeltwanger=s performance review, there is no evidence
that he Aregularly assaulted, intimidated, and
threatened@ her in the manner that GTE
requires.  Id.  There is no suggestion of a deviation from
normal practices in requiring Zeltwanger to undergo a
performance review in Webber=s home, given the company=s structure, or in advising Webber that Turicchi would observe the review.  While relying on a performance review
compiled by a supervisor who could not be expected to be objective may reflect
poor business judgment, it is not extreme and outrageous for purposes of
supporting liability for intentional infliction of emotional distress.  And while telling dirty jokes, discussing
body parts, boasting of sexual prowess, flipping hair while referencing a Abad hair day,@
and delivering a cash prize through clenched teeth as though in a topless bar
certainly constitute unacceptable workplace behavior supportive of a
sexual-harassment claim, it does not, as a matter of law, amount to intentional
infliction of emotional distress.

Undoubtedly,
most conduct that would support a sexual-harassment claim is outrageous and
intolerable, presumably the very reason the Legislature made such conduct
statutorily actionable.  But only when
such behavior repeatedly becomes so forceful and intimidating that a reasonable
person would feel immediately threatened or afraid can a court conclude with
sufficient certainty that the actor intended to cause severe emotional distress
or that severe emotional distress was the primary risk of the actor=s conduct. 
See Standard Fruit & Vegetable Co., 985
S.W.2d at 63.  The record here
reflects numerous instances of repugnant behavior and poor judgment.  It does not, however, demonstrate a regular
pattern of severely abusive behavior A>so outrageous in character, and so extreme
in degree,=@ as to support a claim for intentional
infliction of emotional distress.  Twyman, 855 S.W.2d at 621 (quoting Restatement (Second) of Torts ' 46 cmt. d
(1965)).  

III

Accordingly, I concur
in the Court=s judgment, but not its reasoning. 

 

 

 

__________________________________________

Harriet O=Neill

Justice

 

OPINION DELIVERED:  August 27, 2004.