**James G. CONLEY, Sr., Appellant,**

v.

**Gianna DRIVER, Appellee.**

**No. 06–03–00085–CV.**

Court of Appeals of Texas,
Texarkana.

Submitted Oct. 5, 2005.

Decided Oct. 25, 2005.

---

Ebb B. Mobley, Longview, for appellant.

Stan O. Springerley, Longview, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

The twelve- or thirteen-year-old Gianna Driver thought her stepfather, James G. Conley, Sr., was going to be the father she had never really had. He encouraged her to excel and told her he loved her. But he began initiating sexual contact with her when she was thirteen or fourteen years old, and the sexual abuse continued for approximately three years. Then, after Driver had ended the three years of sexual encounters and had told her mother and others of the sexual abuse by her stepfather, Conley told Driver that he hated her, that she had ruined his life and his marriage, and that he would do everything in his power to ruin her life, including making copies of videotapes he had surreptitiously made of some of their sexual encounters and sending them to Driver's mother, boyfriend, family, and school.[1]

Instead of fulfilling his threat, Conley sued Driver for defamation. Driver counterclaimed for assault and intentional infliction of emotional distress. Finding for Driver, the jury found that Driver should recover $150,000.00 in damages for assault and $150,000.00 in damages for intentional infliction of emotional distress. We affirm the judgment because (1) sufficient evidence supports the assault damages, (2) sufficient evidence supports the damages for intentional infliction of emotional distress, and (3) there was no error in awarding damages for both.

### (1) Sufficient Evidence Supports the Assault Damages

When reviewing the legal sufficiency of the evidence to support facts found at trial, we will not set aside the judgment if there is any evidence of a probative nature to support it. *Ray v. Farmers' State Bank*, 576 S.W.2d 607, 609 (Tex.1979). An appellate court cannot substitute its own findings of fact for those of the trial court

1. Driver's school was the Texas Academy of Mathematics and Science (TAMS) in Denton, on the campus of the University of North Texas.

if there is any evidence in the record to sustain the trial court's findings. *Id.*

In reviewing the trial court's findings for factual sufficiency, we consider all the evidence in the record, including any contrary to the trial court's judgment. *Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989). The trial court's findings may be overturned only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

 There is no set formula for finding the value that should be awarded for enduring physical pain and mental anguish. The process of awarding damages for amorphous, discretionary injuries such as mental anguish or pain and suffering is inherently difficult because the alleged injury is a subjective, unliquidated, nonpecuniary loss. *Dollison v. Hayes,* 79 S.W.3d 246, 249 (Tex.App.-Texarkana 2002, no pet.). Because personal injury damages are unliquidated and are not capable of measurement by any certain standard, the jury has large discretion in fixing the amount of the award. *SunBridge Healthcare Corp. v. Penny,* 160 S.W.3d 230, 248 (Tex.App.-Texarkana 2005, no pet.) (*citing Texarkana Mem'l Hosp., Inc. v. Murdock,* 946 S.W.2d 836, 841 (Tex.1997)); *Dollison,* 79 S.W.3d at 249; *Phillips Petroleum Co. v. Burkett,* 337 S.W.2d 856 (Tex.Civ.App.-Fort Worth 1960, writ ref'd n.r.e.). The measure of damages is a matter of opinion of the fact-finder, and courts in most instances have been reluctant to disturb the findings of a trial court or jury on such matters when there is any evidence to support the findings. *George C. Vaughan & Sons v. Dyess,* 323 S.W.2d 261 (Tex.Civ. App.-Texarkana 1959, writ dism'd); *see also Baylor Med. Plaza Servs. Corp. v. Kidd,* 834 S.W.2d 69, 78 (Tex.App.-Texarkana 1992, writ denied); *Exxon Corp. v. Roberts,* 724 S.W.2d 863 (Tex.App.-Texarkana 1986, writ ref'd n.r.e.).

Conley's first point of error charges the evidence was legally and factually insufficient to sustain the jury's award of damages for assault.[2] Conley concedes the sufficiency of the evidence to support a finding of assault, and challenges only the sufficiency of the evidence to support the damages for assault. Conley argues that Driver did not present evidence of mental anguish, and thus, there was no evidence to support the jury's award of damages.

Driver gave detailed and copious testimony. Driver testified that the first physical contact which she regarded as inappropriate involved Conley coming up from behind her in the kitchen of their home, hugging her, and rubbing her stomach; his hand gradually going "south" beneath her underwear. She also testified that Conley forced her to engage in sexual intercourse with him, that it was very painful, and that he inserted his finger in her anus. She testified it was common for the two to go to a Sonic restaurant, and on the way for Driver to perform oral sex on Conley. Conley made her engage in sexual contact at least one or two times a month.

There is a significant amount of evidence to support damages for assault. After the first time Conley touched Driver sexually, she felt betrayed and went to her room and cried. As a result, Driver attempted suicide twice—the first time at age thirteen or fourteen, by cutting her wrists, and

---

2. As part of that argument, Conley complains the trial court's jury charge did not separate the question of damages into "separate elements such as past or future mental anguish, medical expenses, lost income, [and] pain and suffering." Conley did not request any such breakdown in the charge, so he did not preserve the point for our review. Thus, we need not address this. *See* Tex.R. Civ. P. 272, 274.

again around age fifteen, by taking pills. She was distressed when her mother did not believe her about the sexual abuse by Conley. Driver believes her recovery from the sexual abuse will be a lifelong process. Driver testified, "It hurts me to think that my mom is still married to him today." This has affected how Driver relates to men—she is very distrusting and does not believe them. When Driver found that Conley was obtaining or trying to obtain custody of his granddaughters, she could not sleep at night knowing someone else might live through the nightmare she had been through. Though there were times she could not emotionally handle the abuse, she tried not to let that show on the outside. The first time Driver told school counselor, Donna Fleming, about the sexual abuse, Driver was "tearful and upset." There was a "lot of sadness and emotion [and it] seemed to really hurt" Driver that her mother did not believe her about the allegations of sexual abuse. In later counseling sessions, Driver began to divulge more details and was very upset. Driver said she was extremely upset, felt dirty, did not think she could ever have a normal sex life, and was taking it very hard because she was thinking of marrying her boyfriend. It took eight counseling sessions before Driver started talking about the sexual abuse, because there is "a lot of secrecy involved with incest, a lot of shame." In the counseling session with Driver's parents and Driver, Driver sat between her parents on the couch "like she was trying to make herself real small and invisible and didn't want to be there." Driver exhibited relief when Fleming told her "you can't be around" Conley.

As cited above, there is a tremendous amount of discretion given to the jury on the amount of damages. There is evidence of a probative nature, and thus legally sufficient evidence, to support the jury's award of damages.

While there is evidence to the contrary, Conley's evidence is essentially directed at challenging whether the sexual assault happened at all, not the damages for the assault. There is legally and factually sufficient evidence to support the jury's determination of damages for assault.

### (2) Sufficient Evidence Supports the Damages for Intentional Infliction of Emotional Distress

 Conley complains the evidence was legally and factually insufficient to support the jury's award of damages for Conley's intentional infliction of emotional distress on Driver. Conley argues that intentional infliction of emotional distress requires a showing that the emotional distress at issue is so severe no reasonable person could be expected to endure it. *See GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 618 (Tex.1999); *see also* RESTATEMENT (SECOND) OF TORTS § 46 (1965). As with the first point of error, Conley concedes the sufficiency of the evidence to establish the tort of intentional infliction of emotional distress.[3] He challenges the amount of damages, which, again, is within the jury's discretion.

Driver testified to nonassaultive behavior by Conley which caused her emotional and psychological harm. She testified that she found a video camera in the hotel room she shared with Conley, that he told her he had videotaped their sexual acts of the

---

3. To recover damages for intentional infliction of emotional distress, a plaintiff must establish that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 65 (Tex. 1998).

night before, and that he specifically told her he did this to "destroy [her] reputation, [her] future, [her]marriage and ... relationships." Conley told Driver that the videotape would be his "ace in the hole" should she report the abuse to her school counselor. Conley blamed Driver for ruining his life and marriage after she reported the history of abuse and said he would do "everything in [his] power to ruin hers." This conduct especially evinces Conley's intent to control or harm his step-daughter.

Conley told Driver he had videotaped previous sexual encounters, including one where Driver had fluid dripping down her leg. He told her it was because one day they would not have their special relationship, and he wanted to remember. Conley later said he would ruin Driver's reputation by showing the videotape to future boyfriends or husbands; and said he would send it to her school, her current boyfriend and his family, and to her mother. Fleming said that Driver was very upset and very worried that Conley had threatened her with these videotapes, and that Driver wanted help. Driver acted like she expected videotapes to show up at her dormitory any day. Conley threatened to mail them to various people, demonstrating a pattern of trying to control Driver by these threats. Driver was afraid of Conley making good on his threats to expose her and to withhold financial support. Also, when Driver would refuse Conley sex, he would cry and accuse her of not wanting their "special relationship." When she be-

gan dating a boy in high school, Conley acted like a jealous boyfriend. There is legally sufficient evidence to support damages for intentional infliction of emotional distress.

As with the evidence relative to the assault damages, the minimal contrary evidence challenged whether the events occurred, not the damages sustained as a result of his intentional infliction of emotional distress.

There is sufficient evidence, legally and factually, to support the jury's award of damages for intentional infliction of emotional distress.

### (3) There Was No Error in Awarding Damages for Both

Conley's third point of error complains the trial court erred in entering judgment for damages for liability on the two causes of action, which he claims were mutually exclusive.

Intentional infliction of emotional distress is a "gap-filler"[4] tort, allowing recovery in the rare instances in which a defendant intentionally inflicts severe emotional distress in an unusual manner so the victim has no other recognized theory of redress. *Hoffmann La–Roche, Inc. v. Zeltwanger,* 144 S.W.3d 438 (Tex.2004). The tort supplements existing forms of recovery and therefore provides a cause of action for egregious conduct that might otherwise go unremedied. *Id.* Intentional infliction of emotional distress is not available as a cause of action unless the actor

---

4. The Texas Supreme Court has employed the term "gap-filler" in describing intentional infliction of emotional distress, we believe, to indicate that the tort cannot be used as an alternative to some other, more conventional tort which fits the facts but might be subject to some structural impediment. *See Credit-watch, Inc. v. Jackson,* 157 S.W.3d 814 (Tex. 2005) (sexual harassment claim barred by limitations; intentional infliction claim not available); *Zeltwanger,* 144 S.W.3d 438 (sexual harassment damages statutorily limited; intentional infliction claim not available); *Johnson,* 985 S.W.2d at 68 (bystander claim fails due to added elements of proof beyond ordinary personal injury claim; intentional infliction claim not available as alternative).

intended to cause severe emotional distress, or such distress is a primary risk of the conduct. If conduct is intended or primarily likely to produce severe emotional distress, Section 46 of the Restatement of Torts is the applicable theory of recovery, even if the actor's conduct also produces some other harm. *Johnson*, 985 S.W.2d at 68. Properly limited, the tort is not available when the actor " 'intends to invade some other legally protected interest,' even if emotional distress results." *Zeltwanger*, 144 S.W.3d at 447. Even if the evidence of intentional infliction ·of emotional distress is independent of that necessary to establish another tort claim, the extraneous actions must be "extreme or outrageous as a matter of law." *Id.* "[E]xcept in circumstances bordering on serious criminal acts," even heinous acts "will rarely have merit as intentional infliction claims." *Jackson*, 157 S.W.3d at 818 (emphasis added).

Though Conley's counsel admitted in oral argument that the tort of intentional infliction of emotional distress had been committed, any damages for that tort must be shown to have arisen from the tort, within the framework for that tort as set out by the Texas Supreme Court. We

conclude Driver has made such a showing. The evidence of damages detailed above qualifies under the above authority because the evidence supports findings that (a) the damages for intentional infliction of emotional distress came from Conley's actions, which were separate and apart from his assaultive behavior; (b) those separate actions intentionally inflicted emotional distress on Driver or were likely to produce that result in her; and (c) those separate actions were extreme and outrageous as a matter of law, either being or bordering on criminal behavior.[5] Therefore, the damages for intentional infliction of emotional distress were recoverable in addition to the damages for assault under the facts of this case.

We affirm the judgment of the trial court.

---

**5.** We conclude that, when Conley videotaped, and when he threatened to disclose the videotapes of, his sexual encounters with Driver, his actions at least bordered on serious criminal acts within the meaning of *Creditwatch*. In a cursory review of the Texas Penal Code, we identify a few criminal acts on which Conley's nonassaultive actions at least bordered. "Sexual Performance by a Child" is committed by inducing a child under eighteen years of age to engage in a sexual performance—including a motion picture that can be exhibited—or by a parent, legal guardian, or custodian consenting to his or her minor child's or ward's sexual performance in Section 43.25(b). *See* TEX. PEN.CODE ANN. § 43.25(b) (Vernon Supp.2004–2005). It is also committed if the actor "produces"—takes any action to help create—a performance that includes sexual conduct by a child

under eighteen years of age in Section 43.25(d). *See* TEX. PEN.CODE ANN. § 43.25(d) (Vernon Supp.2004–2005). "Possession . . . of Child Pornography" is committed by knowingly possessing a visual depiction of a child under eighteen engaging in sexual conduct in Section 43.26. *See* TEX. PEN.CODE ANN. § 43.26 (Vernon 2003). "Improper Photography or Visual Recording" is committed if the actor videotapes another without the other's consent and with the intent to arouse or gratify the sexual desire of any person or if, knowing the videotape's sexual contents, he or she "promotes" it—which includes manufacturing, issuing, providing, mailing, presenting, or publishing it, or offering to do the same in Section 21.15 and Section 43.21(a)(5). *See* TEX. PEN.CODE ANN. § 21.15 (Vernon Supp. 2004–2005); § 43.21(a)(5) (Vernon 2003).