**Affirmed in part, reversed in part and Memorandum Opinion filed October 31, 2023.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-22-00724-CV

---

## WAYNE DOLCEFINO AND DOLCEFINO COMMUNICATIONS, LLC D/B/A DOLCEFINO CONSULTING AND HAMZA ALI, Appellants

### V.

## AZHAR M. CHAUDHARY; AZHAR M. CHAUDHARY LAW FIRM, PC, Appellees

---

### On Appeal from the 458th District Court
### Fort Bend County, Texas
### Trial Court Cause No. 22-DCV-292633

---

## MEMORANDUM OPINION

While a fee dispute between an attorney and client remained ongoing, the client contacted a media consultant to report his version of the representation, purportedly to warn the Houston-area immigrant population.

Three events followed: (1) The media consultant released a YouTube video about the attorney, featuring excerpts of various statements by the client about the

attorney, narrated by the media consultant, (2) the client and media consultant or his representatives contacted other past clients of the attorney to whom both made statements about the client's case with the attorney and their own cases handled by the attorney, and (3) the client and the media consultant separately confronted the attorney at his children's bus stop and made various statements to the attorney in front of other parents and children.

As result, the attorney filed a lawsuit against the client and media consultant, including among others, claims for defamation, assault, and civil conspiracy. Both defendants filed motions to dismiss under the Texas Citizens' Participation Act (TCPA) Tex. Civ. Prac. & Rem. Code §§ 27.001 et seq. This is an appeal from an order denying their two motions to dismiss. We affirm in part and reverse in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant Hamzah Ali ("Ali") is an immigrant from Dubai, living with his family in Houston, aspiring for U.S. citizenship. Appellee Azhar Chaudhary is an attorney licensed to practice law in the state of Texas who owns his firm, appellee Azhar Chaudhary Law Firm, P.C., (collectively "Chaudhary" or Appellees). Among other areas of law, Chaudhary practices immigration law and represented Ali and his family for a short period of time pursuant to an oral contract.

After roughly 8 months, Ali terminated the representation and requested Chaudhary refund the fee already paid, an amount which exceeded $800,000. When Chaudhary refused, Ali filed a grievance complaint against Chaudhary with the State Bar of Texas, which was dismissed, and a lawsuit over the fees, which remains pending. Ali also contacted appellants Wayne Dolcefino and Dolcefino Consulting LLC (collectively "Dolcefino" or Appellants), a self-described media consultant and media consulting business.

Three series of events followed: (1) Ali (with his comments concerning

2

Chaudhary's representation) was featured on Facebook and YouTube in a video produced and published by the Dolcefino Appellants on April 12, 2021, titled "*Would You Hire This Lawyer?*", ("The Video"); (2) Dolcefino and Ali separately contacted a total of at least three different former clients of Chaudhary's (the "Client Communications") about Chaudhary's representation; and (3) two instances when first Ali, then a week later when Dolcefino, approached Chaudhary at his childrens' bus stop and made various statements ("The Bus Stop Incidents").

These events prompted Chaudhary to file a lawsuit against Ali and Dolcefino for civil conspiracy, statutory libel, libel per se, invasion of privacy, slander per se, intentional infliction of emotional distress, tortious interference with current business relations, tortious interference with prospective business relations, business disparagement, negligence, and assault.

Ali and Dolcefino each filed their own TCPA motions. In Ali's motion, he moved to dismiss *solely* the defamation claims asserted against him, while Dolcefino appellants' motion targeted all claims asserted against them. Prior to the hearing on their motions, Chaudhary filed a response with affidavits and evidence responsive to the motions. Neither Ali nor Dolcefino filed any evidence with the trial court in advance of the hearing, and at the hearing the trial court orally denied the motion.[1]

Both Ali and Dolcefino appealed.

## II. ISSUES AND ANALYSIS

---

[1] The record contains no written order granting or denying either motion. Accordingly, this matter became appealable when the order was subsequently denied by operation of law. See Tex. Civ. Prac. & Rem. Code § 27.008(a); *see also Simmons v. Taylor*, No. 14-20-00843-CV, 2022 WL 1498090, at *3 (Tex. App.—Houston [14th Dist.] May 12, 2022, no pet.) ("By not signing a written order, we hold that the trial judge did not rule on the Defendants' motion to dismiss, which means that the motion was overruled by operation of law, and that we have appellate jurisdiction under Section 27.008(a).").

The TCPA aims to protect citizens from retaliatory lawsuits that seek to silence or intimidate them on matters of public concern. *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015) (orig. proceeding); *see generally* Tex. Civ. Prac. & Rem Code Ann. §§ 27.001–.011. The purpose of the statute is to identify and summarily dispose of legal actions designed only to chill First Amendment rights, not to dismiss meritorious lawsuits. Tex. Civ. Prac. & Rem Code Ann. § 27.002; *In re Lipsky*, 460 S.W.3d at 589; *Saks & Co. v. Li*, 653 S.W.3d 306, 309 (Tex. App.—Houston [14th Dist.] 2022, no pet.).

The trial court must dismiss the action if the moving party shows by a preponderance of the evidence that the legal action is based on or is in response to the movant's exercise of the right of free speech, the right to petition, or the right of association, or an act described in section 27.010(b). Tex. Civ. Prac. & Rem. Code Ann. § 27.003(a), 005(b).  Notwithstanding, the court may not dismiss such a legal action (i.e., a claim shown to fall within the scope of the TCPA) if the non-movant can establish by clear and specific evidence a prima facie case for each essential element of the claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). If the non-movant meets that burden, the court must still dismiss the claim if the movant "establishes an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law." *Id.* § 27.005(d); *Montelongo v. Abrea*, 622 S.W.3d 290, 296 (Tex. 2021). The evidence the trial court considers in determining whether a legal action should be dismissed under the TCPA includes the pleadings and affidavits filed by the parties. Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a); *see also Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) (noting that the trial court is obligated to consider the plaintiff's pleadings regardless of whether they are offered into evidence).

Whether the TCPA applies to a particular claim is an issue of statutory

interpretation that we review de novo. *See Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018). When construing a statute, our objective is to determine and give effect to the Legislature's intent. *Id.* We construe the TCPA liberally to effectuate its purpose and intent fully. *See Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018).

**A. Did Ali and Dolcefino show by a preponderance of the evidence that any legal action is based on or is in response to the movant's exercise of the right of free speech, the right to petition, or the right of association, or an act described in the catchall provision at section 27.010(b)?**

Both Ali and Dolcefino assert in their TCPA motions that Chaudhary's claims fell within the scope of the TCPA as based on or in response to their "exercise of the right of free speech," a phrase statutorily defined to mean "a communication made in connection with a matter of public concern." *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(3). The latter phrase, a "matter of public concern", means "a statement or activity regarding":

> (A) a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity;
>
> (B) a matter of political, social, or other interest to the community; or
>
> (C) a subject of concern to the public.

Tex. Civ. Prac. & Rem. Code Ann. § 27.001.

Despite some uncertainty and some all-out confusion as to the statute's meaning, in recent years the courts have come to mark important conceptual distinctions and recognize common scenarios relevant to this definition that implicate the scope of the TCPA. The supreme court continues to emphasize a private-public distinction:

> "[t]he phrase 'matter of public concern' commonly refers to matters 'of political, social, or other concern to the community,' and a subject

5

of general interest and of value and concern to the public, ***as opposed to purely private matters***."

*Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 135 (Tex. 2019) (quoting *Brady v. Klentzman*, 515 S.W.3d 878, 884 (Tex. 2017)) (emphasis added); *see also McLane Champions, LLC v. Houston Baseball Partners LLC*, 671 S.W.3d 907, 917 (Tex. 2023) (explaining the statutory text's "temporal anchor" requiring a communication's relevant connection "to a public audience at the time it was made"). Moreover, for example, statements related to a physician's "professional competence and fitness to practice medicine" is "a subject matter that has consistently been recognized by Texas courts as a matter of public concern." *Rockman v. Ob Hospitalist Grp., Inc.*, No. 01-21-00383-CV, 2023 WL 3311548, at *12 (Tex. App.—Houston [1st Dist.] May 9, 2023, no pet. h.) (mem. op.) (citing *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 510 (Tex. 2015)).

We resolve the first step of the analysis in large part by reference to the pleadings,[2] to determine if in fact the allegations are based on or in response to their "exercise of the right of free speech." Each of the claims Chaudhary asserts in his Petition is supported by factual allegations of one of the three events: The Video, the Client Communications, or the Bus Stop Incident.

### 1. Allegations about the Video

Chaudhary's live petition provides, among others, the following allegations about the Video:

> Defendants published a libelous video and accompanying written commentary, which is derogatory, defamatory, and circulates wholly false material against the Plaintiffs in an electronic media

---

[2] Although the statute permits courts to consider matters other than the pleadings "in determining whether a legal action is subject to. . .[the TCPA]" and we have done so, today our conclusion about of whether the scope of the lawsuit falls within the scope of the act rests on the unamended, live pleadings. *See* Tex. Civ. Prac. & Rem. Code § 27.006.

(online/internet) blog entitled the *"Dolcefino Report"* on *Facebook* and *YouTube.* Defendants had actual knowledge that the *"Dolcefino Report"* blog, including the libelous video against the Plaintiffs and accompanying written commentary, was published, and distributed in Fort Bend County via *Facebook* and *YouTube* platforms.

. . .

The article published by the Defendants stated that Mr. Chaudhary was taking advantage of Hamza and his family by charging them for excessive legal work and defrauding them during their immigration proceedings. In or around April 12th, 2021, Defendants via the World Wide Web on the YouTube and Facebook platforms made the following oral and written statements implying that: (1) Mr. Chaudhary scammed Hamzah Ali; (2) Mr. Chaudhary had swindled Hamzah Ali's money from him; (3) that Mr. Chaudhary was not to be trusted; (4) that Mr. Chaudhary was a bad lawyer; (5) that Mr. Chaudhary took full advantage of Mr. Ali's family's fear and desperation; (6) that Mr. Chaudhary was scamming the Houston immigrant community; (7) that Mr. Chaudhary was a sham; (8) that Mr. Chaudhary did not have the level of education he has claims to have obtained; (9) that Mr. Chaudhary made claims on his business websites that were false; (10); that Mr. Chaudhary is attempting to blackmail or scare Hamzah Ali; (11) that Mr. Chaudhary did not perform any legal work for Hamzah Ali; (12) that Mr. Chaudhary lied on a filed court pleading in an associated legal claim between Hamzah Ali and Mr. Chaudhary; (13) and that Mr. Chaudhary is under investigation by the State Bar of Texas.

. . .

Ali and Dolcefino contributed to the publication of the known false and shameful defamation in the Dolcefino Consulting Blog in an attempt to defame and create injury to Plaintiffs.

. . .

All of these statements in the video either directly state, or create, the false connotation that Mr. Chaudhary is an untrustworthy lawyer, has lied about his education, lies to clients about their cases or legal work, lies to clients about how much he charges in legal work, is generally a scammer, is professionally scamming people in their legal affairs, is incompetent to perform simple math, makes promises to clients that never come true, uses the legal system to his advantage to scare or

7

intimidate people, and generally that he should not be associated with as a person or if in need of legal work

The petition further alleges that at the time of filing the Facebook video had "eighty-six reactions from Facebook users", "shared thirty-one times by Facebook users" and in both instances alleges "some of which are from persons living in the greater Houston area".  The YouTube video was alleged to have 1,795 views, 22 likes, and seven comments.

Even if spurred by a single attorney-client relationship between Chaudhary and Ali, the alleged communications—publicly posted on social media video statements about an attorney's professionalism and ability to practice made to such large audience, and one which could reasonably include potential future clients— relates to a matter of public concern. *See generally Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017) (per curiam) (applying TCPA to defamation claim relating to comments made on Facebook); *see also Whitelock v. Stewart*, 661 S.W.3d 583, 596 (Tex. App.—El Paso 2023, pet. filed); *see also Thang Bui v. Dangelas*, No. 01-18-01146-CV, 2019 WL 5151410, at *4 (Tex. App.—Houston [1st Dist.] Oct. 15, 2019, pet. denied); *Melton v. Hah*, No. 09-22-00418-CV, 2023 WL 5122497, at *5 (Tex. App.—Beaumont Aug. 10, 2023, no pet. h.).

To the extent the trial court's denial of the TCPA motions was based a finding that these allegations were not "based on or in response to their exercise of the right of free speech", such finding would have been error.

## 2. Allegations about the Client Communications

The petition provides, among others, the following allegations about the Client Communications:

Since this publication, the Defendants have started a witchhunt of Mr. Chaudhary in an attempt to ruin him and his law firm. Dolcefino has contacted all of Mr. Chaudhary's current and former clients insisting

8

that they watch the defamatory video, that they file bar complaints against Mr. Chaudhary, and impersonating an officer of the court, trying to convince Mr. Chaudhary's clients that they have a legal cause of action against Mr. Chaudhary for not handling their cases professionally.

. . .

Hamza [Ali] has contacted Mr. Chaudhary's friends, former clients, colleagues, and community members and spread lies, against him concerning his ability to perform legal services.

As compared to the allegations about the Video, the allegations about the Client Communications target a significantly smaller audience, individual clients. However, the allegation that Ali and Dolcefino requested former clients to file bar complaints against Chaudhary, colors the communication that might otherwise appear to deal with the private attorney-client relationships between Ali and Chaudhary or Chaudhary and his former clients into a matter of a public scope. *See Hersh v. Tatum*, 526 S.W.3d 462, 468 (Tex. 2017).

To the extent the trial court's denial of the TCPA motions was based a finding that these allegations were not "based on or in response to their exercise of the right of free speech", such finding would have been error.

### 3. Allegations about the Bus Stop Incidents

The petition provides, among others, the following allegations about the Bus Stop Incidents:

On the morning of September 10, 2021, Hamza Ali came to Mr. Chaudhary's local bus stop where fifteen to twenty other people, school children and their parents, congregated waiting for their school bus. Hamza Ali threatened Mr. Chaudhary's life, the lives of Mr. Chaudhary's children, yelled obscenities that could plainly be heard by all people present, and. . .

"You are is scamming the Houston Immigrant Community";

9

"You are a sham";

"You don't have an attorney license".

. . .

On or about September 17, 2021 Defendant, Dolcefino, showed up at Mr. Chaudhary's local bus stop while in the presence of fifteen to twenty school children and their parents, including Mr. Chaudhary's own children. . . Dolcefino started yelling and harassing Mr. Chaudhary and his family with false allegations of defrauding clients, trying to hide his legal mistakes, and being a malfeasant person that is constantly in trouble with the law with numerous lawsuits alleged against him.

Just as statements of a physician's competence to practice medicine is a matter of public concern, so too are statements of a lawyer's competence to practice law. *See, e.g., Melton v. Hah*, No. 09-22-00418-CV, 2023 WL 5122497, at *5 (Tex. App.—Beaumont Aug. 10, 2023, no pet. h.) (posting about negative experience about a cosmetic medical practice a public concern); *see Chehab v. Huttenbach*, No. 11-20-00180-CV, 2022 WL 2165532, at *7 (Tex. App.—Eastland June 16, 2022, no pet.) (lawyers competence).

To the extent the trial court's denial of the TCPA motions was based a finding that the Bus Stop Allegations were not "based on or in response to their exercise of the right of free speech", such finding would have been error.

**B. Did Chaudhary establish by clear and specific evidence a prima facie case for each essential element of his claims against Ali and Dolcefino?**

We next review the trial court's implicit finding that Chaudhary established by clear and specific evidence a *prima facie* case for each essential element of his claims against Ali and Dolcefino. In addition to the pleadings, we consider the evidence supplied by Chaudhary in response to the motion. Chaudhary provided his own declaration and declarations from three former clients, which together with his pleadings provides his prima facie evidence:

### *Evidence concerning the Video*

The Video is narrated by Dolcefino and features interviews with Ali, who can be seen and heard at times. The video begins by introducing Ali and describes Ali's business and internet presence. In the Video, Dolcefino describes the 2017 executive order issued by Donald Trump that limits entry into the United States of individuals from certain countries, including Yemen. In an interview, Ali describes his fear that he would be deported to Yemen under the executive order. To this Dolcefino narrates: "And that's why Hamzah Ali came to Dolcefino Consulting, to expose the lawyer Ali says took full advantage of the family's fear, their desperation. He wants you all to take a good look. The lawyer's name is Azhar Chaudhary."

The Video then shows Ali stating: "This is not about the money for me. This is about going after him. This is making sure that he doesn't do this to anybody else. This is making sure that he doesn't scam the Houston immigrant community any more than he already has."

Ali recounts that Chaudhary told Ali the family's green card process was complete, but the family waited for their green cards to no avail. Ali next states "I really think the man is a sham, in all honesty."

Dolcefino recounts his investigation of Chaudhary. He encourages the viewer to "Google his name." By doing this, and following up, Dolcefino exposes what would likely be Chaudhary's "Linked In" page, as inaccurately indicating a current affiliation with the Supreme Court Institute at the Georgetown School of Law. While presenting the image of an email, Dolcefino states, "But the director of that institute tells us, quote, Mr. Chaudhary has no affiliation with the Supreme Court Institute, and I do not know him." The video then presents video footage of encountering a physical address listed on Google that was no longer current for

11

Chaudhary.

Dolcefino then appears on the video to arrive at a concluding thought: that Chaudhary's response to Ali's claims falls in line with some other attorneys Dolcefino has investigated who take the approach "dirty up the victim," citing Chaudhary's pleadings in the Fee Suit describing all the work Ali hired Chaudhary to perform—Ali "wanted Chaudhary to end his practice altogether, the whole thing, and be his family lawyer full time. Then came the buzz words meant likely to scare Hamza[h] Ali off. Money laundering, RICO, the United States Patriot Act." Dolcefino insinuates that Chaudhary lied in his responsive pleadings to Chaudhary's Fee Suit about the scope of the representation for which he was hired and instead is using as scare tactics valid legal concerns Ali raised with Chaudhary.

Dolcefino states Chaudhary did "his own lawyer math to try to justify" the fee Ali paid him.

The gist of the video Dolcefino posted was Chaudhary is a dishonest lawyer and a "sham."

### The Client Communications

Dolcefino contacted at least two of Chaudhary's past clients, and Ali contacted another.

Ike Umar, a gaming and lending professional, and a 12-year client of Chaudhary's provided a declaration on the subject of Ali's communications with him. Umar's declaration states that shortly after the Video was published, Ali posted it on Umar's Facebook's page. Umar did not take kindly to this and told Ali not to share the Video, blocked Ali from his Facebook page, and told Ali that it was "childish". The next day, Ali personally called Umar by telephone and told him that Chaudhary did not have a law license and that he was not really an

attorney. Ali stated that "Chaudhary had 'scammed him' out of $800,000 and that [Umar] should not be affiliated with him." Later in November 2021, Umar states that Ali approached him at a fundraiser, and before a group of other people "in a volume loud enough for those around [him] to hear" spoke: "Be careful about Chaudhary, he is not an attorney." Umar set forth in his declaration that "[a]s a result of the video posted by Ali, [Umar] has not given Mr. Chaudhary any additional legal work to handle for him, but had Ali not posted the video or called [Umar, Umar] would have continued to use Chaudhary's firm."

Dolcefino contacted Satish Varma, who had been a client of Chaudhary, and said that Dolcefino told him that he was investigating a case Chaudhary had handled for Varma, and that Chaudhary had "messed up" that particular case. According to Varma, Varma told Dolcefino he was incorrect—that in fact Varma had "won the case and [Varma] got what [he] wanted from it." Varma notes that Dolcefino made no mention during this call about fraud on the immigration community. As a result of Dolcefino's call with Varma, Varma "stopped giving Chaudhary all [his] cases," believing that if Chaudhary was "being investigated that the allegations against him must be true." In fact, Varma sent a new case to a different attorney rather than Chaudhary following the contact with Dolcefino.

Another client, Zafar Jaral, an electrical engineer and small business owner, provide a declaration. Jaral was called by Dolcefino's representative who identified himself as Nicholas Kacal, and who claimed to be an attorney. Jaral states that Kacal told him that Chaudhary "screwed" up his case that was otherwise a good case. Jaral states that Kacal told him that he had investigated other Chaudhary-client cases and discovered "similar mishandling of cases." Jaral declaration states that he later discovered Kacal was not a licensed attorney at the time he had spoke with Kacal, in late March of 2021.

Jaral stated that Dolcefino later called him personally and told Jaral one of his cases with Chaudhary was not dismissed on the merits but "as a result of late handling by my lawyer" and that Dolcefino would review cases he believed were mishandled by Chaudhary and make a report to the State Bar and the media.

### *The Bus Stop Incidents*

In his declaration, Chaudhary provides testimony that tracks his allegations of the two bus stop incidents, as set out in Part II.A.3, above.

### PRIMA FACIE CASE ANALYSIS

The motion to dismiss stage is not a battle of evidence; it is the clearing of an initial hurdle. *USA Lending Group, Inc. v. Winstead PC*, 669 S.W.3d 195, 205 (Tex. 2023). The Act does not select plaintiffs certain to succeed; it screens out plaintiffs certain to fail—those who cannot support their claims with clear and specific evidence. *Id*.

Prima facie means "at first sight," and under the Act, is the "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *S&S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018) (quoting *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015)). Evidence is "clear and specific" if it provides enough detail to show the factual basis for the claim. *In re Lipsky*, 460 S.W.3d at 590-91. Such evidence need not be conclusive, uncontroverted, or found credible. *Id.; USA Lending Group, Inc. v. Winstead PC*, 669 S.W.3d 195, 200 (Tex. 2023).

### 1. Invasion of Privacy by Appropriation (Count 4)

We first review the trial court's implicit finding that Chaudhary met his burden of establishing a prima facie case for each element of his claim of invasion of privacy through misappropriation.

Elements of a misappropriation claim are: (1) the defendant appropriated the plaintiff's name or likeness for the value associated with it, and not in an incidental manner or for a newsworthy purpose; (2) the plaintiff can be identified from the publication; and (3) there was some advantage or benefit to the defendant. *Watson v. Talia Heights, LLC*, 566 S.W.3d 326, 329 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

As Chaudhary has alleged, the record makes clear that the Video conspicuously features Chaudhary's headshot with synchronous audio to "take a good look".  For expediency, we presume, without deciding, that the purpose for use of this image was not incidental and was not for a newsworthy purpose. Based upon that presumption and our review of the record, while we acknowledge that Chaudhary's headshot, his name and likeness may well have a particular value, we cannot find that Chaudhary provided any allegation or proof as to its value.  Upon our review of the record, we cannot find any proof showing that either Ali or Dolcefino appropriated the Chaudhary's headshot (or any other image, his name or likeness) to take advantage of any value with which it was associated. *See, e.g., United Locating Services, LLC v. Fobbs*, 619 S.W.3d 863, 872–73 (Tex. App.—Houston [14th Dist.] 2021, no pet.) (explaining that plaintiffs failed to show the value associated with their names and concluding they failed to establish "by clear and specific evidence a prima facie case for the first essential element of their Name Appropriation Claims").

Accordingly, we find the trial court erred in its implicit finding that Chaudhary met his burden of establishing a prima facie case for each element of his invasion of privacy claim by misappropriation against Dolcefino.

## 2. Defamation claims (Counts 2, 3, 5, 6, and 10)

We next review the trial court's implicit finding that Chaudhary met his

15

burden of establishing a prima facie case for each element of his defamation claims. Chaudhary alleged Statutory Libel, Libel Per Se, Business Disparagement, two counts of Slander Per Se and Negligence (the "Defamation Claims"), and submitted evidence in support of these claims in his response to the TCPA motions.

Statutory Libel (as asserted in Count 2) is defined as "a defamation expressed in written or other graphic form . . . that tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation or to publish the natural defects of anyone and thereby expose the person to public hatred, ridicule, or financial injury." Tex. Civ. Prac. & Rem. Code Ann. § 73.001. To prove a prima facie case for statutory defamation requires the plaintiff establish the following elements: (1) the defendant published a false statement; (2) that was defamatory concerning the plaintiff; (3) with the requisite degree of fault concerning the statement's truth; and (4) damages, unless the statement constitutes defamation per se. *Mem'l Hermann Health Sys. v. Gomez*, 649 S.W.3d 415, 423 (Tex. 2022).

Defamation per se (or libel per se as asserted in Count 3) occurs when a statement (specifically, for libel per se, one expressed in written or other graphic form) is so obviously detrimental to one's good name that a jury may presume general damages, such as for loss of reputation or for mental anguish. *See Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 624 (Tex. 2018). This presumption enables the plaintiff to recover nominal damages without proof of any specific loss. *Brady*, 515 S.W.3d at 886. A statement constitutes defamation per se "if it injures a person in h[is] office, profession, or occupation." *Hancock v. Variyam*, 400 S.W.3d 59, 62 (Tex. 2013). The proper inquiry is whether "a defamatory statement accuses

a professional of lacking a peculiar or unique skill that is necessary for the proper conduct of the profession." *Id*. at 67.

Similarly, business disparagement (asserted in Count 10) requires that (1) the defendant publish false and disparaging information; (2) with malice; (3) without privilege; (4) that resulted in special damages to the plaintiff. *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 87 (Tex. App—Houston [1st Dist.] 2013, pet. denied). Business disparagement differs from defamation only in the interest protected: a defamation claim protects personal reputation while a business disparagement claim protects economic interests. *Id*.

"In a defamation case that implicates the TCPA, pleadings and evidence that establishes the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff should be sufficient to resist a TCPA motion to dismiss." *Lipsky*, 460 S.W.3d at 591. The TCPA does not require that Chaudhary produce evidence that each and every alleged *statement* is defamatory to meet his burden under the TCPA; rather, Chaudhary must establish "a prima facie case for each essential element" of his defamation claims against Ali and Dolcefino. Tex. Civ. Prac. & Rem. Code § 27.005(c). *Stone v. Melillo*, No. 14-18-00971-CV, 2020 WL 6143126, at *6 (Tex. App.—Houston [14th Dist.] Oct. 20, 2020, no pet.).

**a. Verifiable statements of fact and evidence of their falsity**

A statement, even a statement of opinion, is actionable in defamation if it expressly or impliedly asserts facts that are objectively verifiable. *Tatum*, 554 S.W.3d at 639; *Bentley v. Bunton*, 94 S.W.3d 561, 579 (Tex. 2002) (distinguishing between fact and opinion). To determine whether a statement is one of fact, a court must look at the entire context in which the statement was made. *Scripps NP Operating, LLC v. Carter*, 573 S.W.3d 781, 795 (Tex. 2019). Statements about a

17

professional's performance are susceptible to verification. *Stone v. Melillo*, No. 14-18-00971-CV, 2020 WL 6143126, at *8 (Tex. App.—Houston [14th Dist.] Oct. 20, 2020, no pet.) (statements that doctor botched surgery and performed unnecessary surgery were not statements of opinion but objectively verifiable false statements of fact). Chaudhary's defamation claims are premised on the statements made in the Video, the Client Communications, and the Bus Stop Incidents. Chaudhary responded and sought to contradict the statements by proof of his and other relevant witness testimony.

Statements at issue concerning the Video, as related to Chaudhary's claims for statutory libel (Count 2), libel per se (Count 3), and business disparagement (Count 10), include the following (1 through 4):

1. Ali stating his purpose for making public statements: "This is making sure that he doesn't do this to anybody else. This is making sure that he doesn't **scam** the Houston immigrant community **any more than he already has**" and Ali stating "I really think this **[Chaudhary] is a sham**, in all honesty."

These statements express that Chaudhary scammed Ali specifically, or otherwise misrepresented himself to Ali specifically, are susceptible to verification. *See Id*. In his affidavit, Chaudhary provided some evidence of the falsity of these statements: specifically, that he was and is a licensed attorney in good standing, that he had a contract to represent Ali, and albeit an oral contract, that under it the terms of the work were clear and that there was no scam involved. Chaudhary further testified that he worked more than 1700 hours for Ali at a rate of $500 per hour, resulting in billings that would have equaled more than the amount he ultimately charged Ali in his retainer. The record contains prima facie proof of the falsity of these statements. *See id*.

2. Dolcefino narrating, including a part of a text chain with Ali, where Chaudhary told Ali that "this is it, it's done" as having been in reference to

18

green cards which were impliedly not "done" or obtained by Chaudhary at the time. Ali states that he and his family subsequently waited every day to find the green cards in the mail.

These statements are susceptible to verification. *See Id*. Chaudhary provided testimony of the implicit falsity the publication, explaining that it had omitted vital parts of Chaudhary's and Ali's communications—that Chaudhary informed Ali his work and travel authorization were approved and Ali responded inquiring what the next steps were, indicating Ali knew the process was not complete. Thus Chaudhary provided some evidence of the falsity by explaining the context and omitted parts of his communications with Ali which illustrates a basis for Ali to have known that Chaudhary's statement that "this is it, it's done" did not mean that Chaudhary secured green cards for Ali and his family.

3. Dolcefino narrating and confirming Ali's statements that Chaudhary "took full advantage of [Ali's] family's fear, their desperation" about being deported to Yemen, refers to Ali as the "victim", and that Chaudhary charged $835,000 for what he "promised would be expedited green cards and a path to citizenship within days", and implying by these statements that this was Chaudhary's basis of securing his representation of Ali and justifying the cost of his services.

These statements are susceptible to verification. *See id*. Chaudhary testified that these statements were false, that his services under his agreement with Ali involved more than obtaining green cards, that Ali knew obtaining green cards would be an arduous process. Chaudhary testified that he was introduced to Ali by a third party and that Ali already had an immigration lawyer but Ali wanted a lawyer that could handle more than immigration matters. Because Chaudhary's contradicting statements were not rebutted, the record contains prima facie proof of their falsity. *See id*.

4. Dolcefino narrating and producing video stating Chaudhary is not just a "lawyer who has bad results" but also misrepresents his credentials, his education and public presence.

The implicit statement taken in context is that Chaudhary is a lawyer who always or usually has bad results and lies, and is thus susceptible to verification. *See id.* Chaudhary sought to challenge the veracity by his testimony that he is a lawyer in good standing and has been practicing for many years. The affidavits of his three clients also demonstrate their satisfaction with his result. Because Chaudhary's contradicting statements were not rebutted, the record contains prima facie proof of their falsity. *See id.*

The statements at issue concerning the Client Communications, related to Chaudhary's Slander Per Se and Business Disparagement, though not specifically enumerated under a particular count in Chaudhary's petition, but factually alleged in the Petition, and alleged without objection in his response to appellants' TCPA motions, include statements made by Ali, Dolcefino, and Dolcefino's representative Nick Kacal to Zafar Jaral, Ike Umar, and Satish Varma.

5. Kacal followed by Dolcefino made calls to Jaral and made statements about Chaudhary in those calls that Jaral had a good case that Chaudhary had "screwed up". Dolcefino specifically told Jaral that his case was dismissed "not on the merits but because of late handling by [Chaudhary]."

Cacal and Dolcefino's statements are susceptible to verification. *See id.* Jaral's testified that he was satisfied with Dolcefino's representation, and that Chaudhary handled his case appropriately. Because these contradicting statements were not rebutted, the record contains prima facie proof of their falsity. *See id.*

6. Ali made statements about Chaudhary to Ike Umar: First, when Ali tagged Umar in the Video posted on Facebook, second when, by phone, Ali told Umar to be careful of Chaudhary, that Chaudhary was a fraud, that Chaudhary did not have a law license, that Chaudhary

20

was not an attorney, and that Chaudhary had "scammed" Ali out of $800,000.00. Third, when Ali ran into Umar at a fundraiser, Ali told Umar and those nearby "you should be careful about Chaudhary, he is not an attorney."

Ali's statements about Chaudhary to Ike Umar are susceptible to verification. *See id*. Chaudhary testified that he is an attorney eligible to practice law in Texas, that he is not a fraud and that he did not scam Ali. Because Ali did not rebut these statements, the record contains prima facie proof of their falsity. *See id*.

7. Dolcefino made statements about Chaudhary to Satish Varma by saying Chaudhary messed up Varma's case. In that case involving church governance, Mr. Varma prevailed and was very happy with the result.

Dolcefino's statements about Chaudhary to Satish Varma are susceptible to verification. *See id*. Varma testifies and supplies proof that he won the case Dolcefino referred to. As Ali did not rebut these statements, the record contains prima facie proof of their falsity. *See id*.

The statements at issue concerning the Bus Stop, as related to Chaudhary's claims for slander per se (Counts 5 and 6), and business disparagement (Count 10), include but are not limited to the following (8 through 9):

8. Ali stating to Chaudhary loudly enough for other's to hear: "You are scamming the Houston Immigrant Community"; "You are a sham." And "You don't have an attorney license."

Ali's statements about Chaudhary to the Bus Stop audience are susceptible to verification. *See id*. Chaudhary testified that he is an attorney eligible to practice law in Texas, that Ali's allegations are false, that he is not a fraud and that he did not scam Ali. As Ali did not rebut these statements, the record contains prima facie proof of their falsity. *See id*.

9. Dolcefino stating to Chaudhary loudly enough for other parents and children

21

at bus stop to hear him state that Chaudhary is defrauding clients, concealing malpractice from clients, and that he is a malfeasant person.

Dolcefino's statements about Chaudhary to the Bus Stop audience are susceptible to verification. *See id.* Chaudhary testified that he is an attorney eligible to practice law in Texas, that Dolcefino's allegations are false, that he is not a fraud and that he did not scam Ali. As Ali did not rebut these statements, the record contains prima facie proof of their falsity. *See id.*

In sum, Chaudhary's affidavit and attached evidence, along with the affidavit of his clients, denying Ali and Dolcefino's allegations satisfies his burden with respect to the falsity element at this preliminary stage. *See id.; see also Rodriguez v. Gonzales*, 455 S.W.3d 844, 854, 856 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (plaintiff's affidavit denying co-defendant's allegations suffices as evidence of falsity in context of TCPA motion to dismiss); *see also Williams v. Ramey*, No. 14-21-00158-CV, 2022 WL 2517118, at *6 (Tex. App.—Houston [14th Dist.] July 7, 2022, pet. dism'd).

## b. Defamatory nature of the statements

A statement is defamatory if it "tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation." *Tatum*, 554 S.W.3d at 637–38 (citing Tex. Civ. Prac. & Rem. 73.001).

"[A] plaintiff can bring a claim for defamation when discrete facts, literally or substantially true, are published in such a way that they create a substantially false and defamatory impression by omitting material facts or juxtaposing facts in a misleading way." *Id.* at 627. The primary inquiry in determining whether a publication is defamatory is whether the words used "are reasonably capable of a defamatory meaning." *Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653,

22

655 (Tex. 1987). In answering this question, the "inquiry is objective, not subjective." *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 157 (Tex. 2004). It requires a court to construe a publication "based upon how a person of ordinary intelligence would perceive it." *Tatum*, 554 S.W.3d at 629 (emphasis omitted); *see also Stone*, 2020 WL 6143126, at *9–10 ("A person of ordinary intelligence would perceive the flyer and sign statements to negatively affect the reputation of Melillo in his profession.").

The TCPA does not require a plaintiff to produce evidence that each and every statement in a publication is defamatory to meet its burden, or to prove its cause of action at a trial on the merits. *Stone*, 2020 WL 6143126, at *6.

The evidence supplied in the record establishes the Video to be defamatory. The premise of the video is that Chaudhary is a "sham." At the outset, the Video's purpose is clear, with Ali stating: "This is about going after" Chaudhary. Dolcefino further reports Chaudhary accepted thousands of dollars for legal services he said he completed but did not; lied on the internet about his credentials; lied about where is office is located; misrepresented the stature and success of his firm on the firm's website; lied about the scope of the representation for which he was hired; and did not earn the fee he was paid for legal work completed for Ali. A reasonable person viewing the Video would construe it as injuring Chaudhary's reputation and impeaching his honesty and integrity. *Tatum*, 554 S.W.3d at 637; *see also id*. at 627 (a person can be liable for defamation if his statements are true but made in an improper context). Indeed, the gist of the Video is that Chaudhary is a dishonest lawyer.

The record also provides sufficient clear and specific evidence that the Video is defamatory per se. A statement is defamatory per se when it is "so obviously harmful that general damages, such as mental anguish and loss of

23

reputation, are presumed." *Lipsky*, 460 S.W.3d at 596. A statement that injures one in his profession or a statement that "ascribes to another conduct, characteristics or a condition that would adversely affect his fitness for the proper conduct of his lawful business, trade or profession, or of his public or private office, whether honorary or for profit" is defamatory per se. *Hancock*, 400 S.W.3d at 66–67 (citation omitted). "Truthfulness is peculiarly valuable to one's status in the legal profession, and especially with respect to the legitimacy of a lawyer's or a law firm's legal fees." *Chehab v. Huttenbach*, No. 11-20-00180-CV, 2022 WL 2165532, at *7 (Tex. App.—Eastland June 16, 2022, no pet.).

Moreover, the communications in the Video constitute defamation per se. In the Video, Ali calls Chaudhary a "sham," states that he "scam[s]" his clients, and Dolcefino calls into question Chaudhary honesty with regard to fees, and generally casts doubt on his honesty as a lawyer. Because honesty is a required quality of a lawyer, especially with regard his legal fees, the Video and the Ali and Docefino's communications within it constitute defamation per se. *See Chehab*, 2022 WL 2165532, at *7.

There was sufficient evidence that the Client Communications and the communications in the Bus Stop Incidents were defamatory and defamatory per se. The gravamen of the Client communications were that Chaudhary is a fraud, does not have a law license, mishandled various cases, and scammed Ali. The gravamen of the communications in the Bus Stop Incidents were that Chaudhary is a sham, does not have a law license, is scamming the immigrant community, is "defrauding clients, concealing malpractice from [his] clients, and being a malfeasant person." All these communications not only injure Chaudhary's reputation but also go directly to his fitness to practice law—Chaudhary's profession.

**c. Requisite Intent**

24

When the plaintiff is a private figure like Chaudhary, the relevant inquiry is whether the defendant acted negligently in making the defamatory statements. *Tatum*, 554 S.W.3d at 634. This means the plaintiff must establish the defendant knew or should have known the defamatory statement was false. *Lipsky*, 460 S.W.3d at 593.

As discussed above, the gist of the Video is that Chaudhary is a dishonest lawyer, inflates his fee, and is a "sham." Ali acted negligently as to the truth of the statements they made within the Video to support this gist. For example, Appellants suggest Chaudhary lied about the scope of the representation for which he was hired and did not earn the fee he was paid for legal work completed for Ali. But Chaudhary testifies he was hired and paid to work for Ali and his family concerning more than applying for green cards. And Chaudhary testifies he was paid up front at Ali's behest. Ali acted at least with negligence in suggesting Chaudhary was hired only to help him get a green card and did not earn the fee he was paid because Ali is the party with whom Chaudhary agreed as to the services and the fee, including its structure. Additionally, Ali and Dolcefino suggest Chaudhary lied to Ali about the status of his green card application. Ali acted with negligence regarding the truth of this statement, as Chaudhary provided correspondence from Ali demonstrating Ali knew that only work and travel authorization was received and the process was indeed not complete. Ali's degree of fault in making the defamatory statements at issue cannot be ignored when Ali's intention in being featured on the Video is clear from the start: "This is going after" Chaudhary.

Moreover, Ali was negligent with regard to the Client Communications and the communications he made in the Bus Stop Incident that Chaudhary is a sham, a fraud, a scammer, and lacks a law license. Indeed, a lawyer's standing in the state

25

of Texas is publicly available on the internet, and Ali should have known his comments claiming Chaudhary is not a lawyer were false. Ali should have known his comments that Chaudhary is a fraud and a scammer were false for the same reason he should have known the communications in the Video were false: Ali is the one with whom Chaudhary contracted in this case, and Ali knew the terms of the work for which he hired Chaudhary.

Dolcefino claims for the first time on appeal that that he is a media defendant, and for this reason Chaudhary must prove actual malice to establish his defamation claims. Even presuming without deciding that the actual malice standard applies, the evidence in record for the TCPA motion is prima facie evidence that Dolcefino acted with actual malice. Actual malice involves the making of a statement with knowledge that it is false or with reckless disregard of whether it is true. *Carr v. Brasher*, 776 S.W.2d 567, 571 (Tex. 1989). "'Reckless disregard' is defined as a high degree of awareness of probable falsity, for proof of which the plaintiff must present 'sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.'" *Id*. (*quoting St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)).

"[A]ctual malice may be inferred if the plaintiff demonstrates that the defamatory statement had no basis in fact, was fabricated by the defendant, or was the product of her imagination." *Bookout v. Shelley*, No. 02-22-00055-CV, 2022 WL 17173526, at *19 (Tex. App.—Fort Worth Nov. 23, 2022, no pet.); *see also Bentley*, 94 S.W.3d at 596 ("Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant[or] is the product of his imagination[.]" (citation omitted)).

The record on the TCPA hearing provides prima facie support for the allegation that Dolcefino acted with negligence and actual malice with regard to

26

the Client Communications and with regard to the Bus Stop Incident which he perpetrated. Chaudhary through his affidavit and his client's affidavits, presuming their truth, demonstrated that one or more statements with respect to each incident had no basis in fact, whether being clearly fabricated or imagined by Ali, or otherwise patently untrue. Dolcefino's Client Communications included that Chaudhary mishandled various cases. There can be no basis in fact for such a claim when the clients actually told Dolcefino the case had been won or that they were pleased with the services. Dolcefino did not offer any evidence, generally, or specifically of mishandling by Chaudhary. Dolcefino's communications in the Bus Stop Incident were that Chaudhary is defrauding his clients, concealing malpractice from his clients, and is a malfeasant person. But there is no basis in fact for any of these claims, either. Indeed, Dolcefino's only possible support for the claim that Chaudhary is defrauding his clients is from Ali, who, as discussed above, shared a wholly false account regarding the scope of the work Chaudhary was to perform. And there is no support in the record that Chaudhary conceals malpractice from his clients—not even the Video attempts to establish that Chaudhary has committed malpractice.

Finally, Dolcefino acted with negligence and actual malice with regard to the Video because, again, the only possible support for the Video's gist that Chaudhary is a dishonest lawyer and a "sham" comes from Ali who, unlike Chaudhary, has not sworn under penalty of perjury that his account of the events at issue are true and correct. Chaudhary through his affidavit and his client's affidavits, and the various factual omissions from Ali and Chaudhary's communication that stifle a complete truthful report provide sufficient evidence to permit the conclusion that the Dolcefino entertained serious doubts as to the truth of his publication's statements that Chaudhary is a dishonest lawyer and a "sham".

**d.     Damages**

To prove an action for defamation, the plaintiff must prove either (1) that general damages are presumed because of the nature of the defamatory statement or (2) that the defendant's publication of the statement proximately caused the plaintiff's damages. *Brady*, 515 S.W.3d at 886.

A plaintiff's damages may be presumed if he establishes the defendant's statement is defamatory per se and either that the defendant published the statement with actual malice or that the statement involves a private plaintiff and a private concern. *Hancock*, 400 S.W.3d at 65-66. General damages are recoverable in an action for defamation. *Kelly v. Diocese of Corpus Christi*, 832 S.W.2d 88, 94 (Tex. App.—Corpus Christi 1992, writ dism'd). In a libel or slander action, general damages are noneconomic damages that do not require the plaintiff to prove that it suffered a pecuniary loss. See *Hancock*, 400 S.W.3d at 65–66. General damages include compensation for injury to character or reputation, injury to feelings, mental anguish, and similar wrongs. *Bentley*, 94 S.W.3d at 604.

All the statements at issue constitute defamation per se because they tend to injure Chaudhary in his profession as a lawyer. Statements that injure a person in their office, profession, or occupation are defamatory per se. *See Bedford v. Spassoff*, 520 S.W.3d 901, 905 (Tex. 2017); *Hancock*, 400 S.W.3d at 64. The Video, Client Communications, and Bus Stop Incidents all are injurious to Chaudhary's profession. Even presuming the events did not constitute defamation per se, we note that Chaudhary established general damages. Chaudhary testified as to "intense anxiety," constant fear for his life and for his family, "bouts of deep depression and a sense of helplessness." Varma and Umar, testified that they have declined to give Chaudhary further business as a result of Appellants' defamation. *Hancock*, 400 S.W.3d at 65 (permitting recovery of "economic damages such as

for lost income" in defamation case).

Because the record shows that Chaudhary provided clear and specific evidence (i.e. his declaration, the declarations of former clients, and supporting documents) establishing a prima facie case for all the elements of his defamation claims, we overrule Ali and Dolcefino's challenge to the trial court's implicit finding that Chaudhary carried his burden with respect to these claims.

### 3. Tortious Interference with Current and Prospective Business Relations (Counts 8 and 9)

We next review the trial court's implicit finding that Chaudhary met his burden of establishing a prima facie case for each element of his tortious interference of a current and prospective business relation claims. To prevail on a claim for tortious interference with *current* business relations, the plaintiff must establish:

> (1) The existence of a contract;
>
> (2) the defendant willfully and intentionally committed acts that were calculated to cause damage to the plaintiffs in their lawful business;
>
> (3) the party had actual knowledge of the existence of the contract and of the plaintiffs interest in it, or knowledge of facts and circumstances that would lead a reasonable person to believe in their existence;
>
> (4) the defendant's acts were the proximate cause of the harm; and
>
> (5) actual damage and loss to the plaintiff.

*Washington Square Financial v. RSL Funding*, 418 S.W.3d 761, 767 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). To prevail on a claim for tortious interference with *prospective* business relations, the plaintiff must establish that:

> (1) there was a reasonable probability the plaintiff would have entered into a business relationship with a third person;
>
> (2) the defendant intentionally interfered with that relationship;
>
> (3) the defendant's conduct was independently tortious or unlawful;

29

(4) the interference proximately caused the plaintiff's injury; and

(5) the plaintiff suffered actual damage or loss.

*Coinmach Corp. v. Aspenwood Apt. Corp.*, 417 S.W.3d 909, 923 (Tex. 2013). Chaudhary contends that the Client Communications constitute tortious interference both with existing contracts and with prospective relations. While we agree that the evidence in the record established a prima facie case for tortious interference of prospective business relationships, we do not find clear and specific proof of interference with current business relationships. In the absence of any clear and specific proof in the record of any identifiable existing contract or specific ongoing representation between Chaudhary and any of the clients at the time of the tortious conduct, Chaudhary lacks prima facie proof of the first element of an interference with any *current contract*.

*Valid ongoing business relationship with reasonable probability of a contract*

Satish Varma, Ike Umar, and Zafar Jaral all testified they are clients of Chaudhary, establishing Chaudhary had ongoing relationships with each, who frequently provided him business and describe contractual relationships (for legal representation) in the past. Additionally, Satish Varma and Ike Umar testified they had legal work they could have engaged Chaudhary to help them with but declined to do so as a result of the Client Communications. Upon this unrebutted proof, Chaudhary presented clear and specific prima facie evidence of the first element that he was reasonably likely to enter future contracts with Satish Varma and Ike Umar but for the Client Communications.

*Intentional interference with the business relationship*

All three clients testified that Ali, Dolcefino, or an employee of Dolcefino reached out to them and informed them of negative information about Chaudhary. (e.g., Varma testifies Dolcefino contacted him to tell him Chaudhary "messed up"

30

a prior case; Umar testifies Ali contacted him multiple times, showed him the Video, and told him Chaudhary is a fraud; Jaral testifies an employee of Dolcefino contacted him and told him Chaudhary mishandles cases and that he should contact a different firm or could be assisted in filing a complaint to the State Bar). These communications constitute intentional interference with existing and prospective relations. Ali and Dolcefino knew these individuals were existing clients of Chaudhary's—as they called them specifically based on that relationship and intended their communications to affect these clients' decisions to engage Chaudhary in the future.

*Independently tortious or unlawful conduct*

The evidence of the Client Communications demonstrated that they were independently tortious or unlawful. As discussed in the previous section, the Client Communications themselves constitute *defamation per se*. The communications are false statements with no basis in fact that tend to injure Chaudhary in the conduct of his profession.

*Interference proximately caused the plaintiff's injury and damages suffered*

Chaudhary's affidavit and the affidavits of Varma and Umar provide proof that the Client Communications caused Chaudhary damage—the loss of specific additional legal work that they would have directed to Chaudhary absent the interfering, defamatory conduct. Both Varma and Umar testified under penalty of perjury they have declined to refer Chaudhary additional legal work as a result of the Client Communications.

The unrebutted declarations of Varma, Umar, and Jaral are clear and specific evidence establishing a prima facie case for each element of Chaudhary's tortious interference with prospective business claims. We sustain Ali and Dolcefino's

31

complaint to the extent they complain that the trial court implicitly denied their motion based on Chaudhary satisfying his burden with respect to claims for tortious interference of any or current contractual business relationship based on an identifiable *existing contract* (Count 8), but otherwise overrule the complaint as to prospective business relationships (Count 9).

### *5. Assault (Count 11) and Intentional Infliction of Emotional Distress (Count 7)*

We next review the trial court's implicit finding that Chaudhary met his burden of establishing a prima facie case for each element of his intentional infliction of emotional distress claim against Ali and Dolcefino. We note however that Chaudhary has alleged an assault claim exclusively against Ali in connection with the First Bus Stop incident. Though the parties have addressed the assault claim on appeal, because Ali did not seek to dismiss this claim in his TCPA motion and because Dolcefino (who lodged a more global TCPA attack) was not implicated by the claim in Chaudry's pleading, not within the scope of the court's order, and thus we need not review the assault claims.

And though Dolcefino, having been loosely implicated in Chaudhary's pleadings for intentional infliction of emotion distress, challenged the claim in the trial court and now prompts our review of the trial court's ruling on those claims, Chaudhary only provided specific allegations and evidence to support that tort against Ali—which happens to be the same allegations and evidence used to support Chaudhary's *assault* claims against Ali, i.e., the first Bus Stop Incident. Relatedly, we note, that the tort of intentional infliction of emotional distress is available only in those situations in which severe emotional distress is the intended consequence or primary risk of the actor's conduct. *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 67 (Tex.1998). Where emotional distress is solely derivative of or incidental to the intended or most likely consequence of the actor's

32

conduct, recovery for such distress must be had, if at all, under some other tort doctrine. *Id*.

The elements of a claim for intentional infliction of emotional distress are: (1) the defendant acted intentionally or recklessly; (2) the plaintiff suffered severe emotional distress; (3) the defendant's conduct was extreme and outrageous; and (4) the defendant's conduct caused the plaintiff's extreme emotional distress. *Hersh v. Tatum*, 526 S.W.3d 462, 468 (Tex. 2017); *Kroger Tex. L.P. v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006). Physical threats paired with vulgar or obscene language can rise to the level of extreme and outrageous. *See Tiller v. McLure*, 121 S.W.3d 709, 714 (Tex. 2003).

Chaudhary established the elements of his intentional infliction of emotional distress claim as it relates to Ali's threats in the Bus Stop Incident perpetrated by Ali. Chaudhary testified in his declaration (which remains unchallenged) that Ali came to Chaudhary's local bus stop where Chaudhary and his children were present and threatened: "I am coming after you"; "I am going to kill you"; I am going to kill you[r] children"; "you Mo….fu…r." Nothing in the record reasonably disputes the logical inference that that these statements by Ali were made intentionally.

Although language alone will rarely meet the high bar for what constitutes "extreme and outrageous" conduct, we are satisfied that Chaudhary's unrebutted testimony of Ali's mortal threats of harm to Chaudhary and his children in the presence of his children, other children and their parents, paired with the obscene language, reaches at least the minimum threshold of "extreme and outrageous" conduct. *See Tiller*, 121 S.W.3d at 714. Likewise, Chaudhary testifies in his declaration that as a result, he suffered damages, including emotional distress and fear for himself and his family, depression anxiety and hopelessness, which for

purpose of the TCPA arguably satisfies the minimum threshold on his damage element for intentional infliction of emotional distress. *See LaCoure v. LaCoure*, 820 S.W.2d 228, 234 (Tex. App.—El Paso 1991, writ denied); *see also Walters*, 699 S.W.2d at 945 (plaintiff ill, disoriented, upset, nervous, and angry); *Service Lloyds Ins. Co. v. Greenhalgh*, 771 S.W.2d 688, 693 (Tex. App.—Austin 1989), *rev'd on other grounds*, 787 S.W.2d 938 (Tex. 1990) (extreme embarrassment); *Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 307 (5th Cir. 1989) (insomnia, nervousness, and paranoia).

Accordingly, the challenge to trial court's implicit finding that Chuadhary's presented a prima facia case of IIED is overruled only to the extent Chaudhary's intentional infliction of emotion distress claims are based on the factual theory tied to First Bus Stop Incident. Chuadhary's provided no other allegations or evidence to support a claim based on any other factual theory raised in his pleadings. Moreover, because the live pleadings could be read to include a claim against Dolcefino for IIED and Chaudhary did not provide any prima facie evidence to support such a claim, we sustain Dolcefino's challenge to the court's implicit denial of the motion to the extent the claim was asserted against Dolcefino as well as to Ali based on any factual theory other than the First Bus Stop Incident.

### 7. Civil Conspiracy

We next review the trial court's implicit finding that Chaudhary met his burden of establishing a prima facie case for each element of his civil conspiracy claim. The elements of a civil conspiracy claim are: (1) two or more persons; (2) with an object to be accomplished; (3) have a meeting of the minds on the object or course of action; (4) commit one or more unlawful, overt acts; and (5) proximately cause damages to the plaintiff. *Operation Rescue—Nat'l v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 975 S.W.2d 546, 553 (Tex. 1998). The agreement may be

proved by evidence of a course of conduct from which a tacit agreement to act in concert may be inferred. *See Wackman v. Rubsamen*, 602 F.3d 391, 409 (5th Cir. 2010).

Appellants' only arguments that Chaudhary has failed to establish his conspiracy claim is that Chaudhary has failed to establish any other tort against them. Indeed, some courts have concluded that when a defendant brings a TCPA motion seeking to dismiss a derivative claim of either "civil conspiracy" or "aiding and abetting," the court need only analyze the issue of whether the underlying tort upon which those claims rely survives the motion. *Whitelock v. Stewart*, 661 S.W.3d 583, 607 (Tex. App.—El Paso 2023, pet. filed). This would be the end of the analysis, because as shown above, Chaudhary established his defamation claims against Dolcefino and Ali alike. *See, e.g., Thibodeaux v. Starx Inv. Holdings, Inc.*, No. 03-20-00613-CV, 2021 WL 4927417, at *11 (Tex. App.—Austin Oct. 22, 2021, pet. dism'd) (mem. op.); *Whitelock v. Stewart*, 661 S.W.3d 583, 607 (Tex. App.—El Paso 2023, pet. filed). However, in our case Dolcefino has raised arguments concerning his liability for Ali's statements. Therefore we continue the analysis.

The record establishes that Ali and Dolcefino conspired to defame Chaudhary, as their meeting of the minds to accomplish this unlawful purpose can be inferred from their course of conduct. *See In re Lipsky*, 460 S.W.3d at 589 (permitting circumstantial evidence in TCPA motion practice). First, the two appear on the Video, and together they assert that Chaudhary is a dishonest lawyer and a sham. Second, both Dolcefino and Ali perpetrated the Bus Stop Incidents and communicated similar messages: that Chaudhary is a sham and not a real lawyer. Third, both Dolcefino and Ali reached out to Chaudhary's current clients to spread the same message: that Chaudhary is a subpar lawyer and has mishandled cases.

We find it unique and significant that with respect to each of the three factual basis of unlawful conduct alleged by Chaudhary, that Chaudhary provided clear and specific evidence that both Ali and Dolcefino participated. The direct evidence taken with the circumstantial evidence permitted the trial court to infer the conspiracy to defame, and it was not error to deny the Motions on the conspiracy claim. Accordingly, the trial court did not err by denying the motion to dismiss those two claims. *See Whitelock v. Stewart*, 661 S.W.3d 583, 607 (Tex. App.—El Paso 2023, pet. filed) (finding the trial court did not err in denying civil conspiracy claims).

The Video and the unrebutted declarations of Chaudhary's former clients are clear and specific evidence establishing a prima facie case for each element of Chaudhary's conspiracy claim. Accordingly, we overrule appellants' complaint to the trial court's implicit finding Chaudhary provided clear and specific evidence establishing a prima facie case for each element of his civil conspiracy claim.

## C. No affirmative defense

Once Chaudhary satisfied his burden on his claims, the burden shifted back to the Ali and Dolcefino to prove each essential element of any valid defense by a preponderance of the evidence. *City of Dall. v. Ahrens*, No. 10-19-00137-CV, 2022 WL 554350, at *11 (Tex. App.—Waco Feb. 23, 2022, no pet.). In considering the affirmative defenses, courts apply a "standard of review that is essentially equivalent to a motion for summary judgment on an affirmative defense." *Batra v. Covenant Health Sys.*, 562 S.W.3d 696, 708 (Tex. App.—Amarillo 2018, pet. denied). Only on appeal does Dolcefino attempt to raise a truth defense and fair comment privilege defense. Dolcefino asserted no privileges or defenses in the lower court, and yet even if he did assert what he attempts to raise on appeal, the record is clear that neither Ali nor Dolcefino provided any evidence or valid

argument as a matter of law in support of these defenses.

Accordingly, we sustain the trial court's implicit finding that, for all claims for which Chaudhary provided clear and specific evidence of each element of his prima facie case, Ali and Dolcefino failed to rebut such a showing under section 27.003(d). See Tex. Civ. Prac. & Rem. 27.003(d).

## III. CONCLUSION

We reverse the trial court's denial of the TCPA motion to the extent it concluded that Chaudhary established with clear and specific evidence prima facia proof of his invasion of privacy claims against both Ali and Dolcefino (Count 4), his intentional infliction of emotional distress claims against Dolcefino (Part of Count 7), his intentional infliction of emotional distress claims against Ali based on factual theories other than the First Bus Stop Incident (Part of Count 7), and his tortious interference claims against both Ali and Dolcefino based on any alleged current contract (Count 8). We otherwise affirm the trial court's denial of Ali and Dolcefino's respective TCPA motions concerning Chaudry's remaining claims, specifically Counts 1, 2, 3, 5, 6, part of Count 7 and Counts 9 and 10.

/s/     Randy Wilson
        Justice

Panel consists of Justices Jewell, Hassan, and Wilson.

37